[No. D062596. Fourth Dist., Div. One. Jan. 16, 2013.]

In re MICHAEL E., JR., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
MICHAEL E., SR., Defendant and Appellant.

**COUNSEL**

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**NARES, Acting P. J.**—Michael E., Sr., appeals from the juvenile court's order denying his fiancée status as a nonrelative extended family member (NREFM) under Welfare and Institutions Code section 362.7.[1] We affirm the order.

#### FACTUAL AND PROCEDURAL BACKGROUND

In January 2012, five-year-old Michael E., Jr. (Michael), was adjudicated a dependent of the juvenile court due to domestic violence and his mother's alcohol abuse. Michael was placed in relative care with a maternal great-aunt and -uncle. Michael's father had not had any contact with him since approximately October 2009 and his whereabouts were unknown.

In May, Michael's relatives said they were no longer able to care for him. The San Diego County Health and Human Services Agency (Agency) detained Michael in foster care.[2] In June, Michael's mother, Jennifer E., realized she was not ready to care for Michael and asked the social worker to initiate an Interstate Compact on the Placement of Children (ICPC; Fam. Code, § 7900 et seq.) to allow her parents, who resided in Michigan, to take guardianship of Michael. The social worker reported that Jennifer and

---

[1] Further statutory references are to the Welfare and Institutions Code.

[2] The Agency belatedly filed a section 387 petition on July 29, 2012.

Michael had lived with the grandparents until November 2010, when the grandparents moved to Michigan. In 2011, the grandparents cared for Michael for a total of six months. They continued to telephone him every week. The court granted the social worker the discretion to place Michael with his maternal grandparents upon ICPC approval.

Shortly before the six-month review hearing, the Agency located Michael, Sr., in local custody. He did not expect to be released until October 2013. Michael, Sr., said he lived with his son for the first 18 months of his life. He was incarcerated when Michael was approximately three and one-half years old. When Michael, Sr., was released in April 2011, he was unable to locate his son. Michael, Sr., asked the Agency to place Michael with a paternal aunt and uncle in Tennessee. He informed the social worker that he and his fiancée, E.C., were the parents of an infant son.

At a hearing on July 23, the court vacated its order granting the social worker discretion to place Michael with his grandparents upon ICPC approval and authorized the social worker to consider paternal relatives for placement.

On August 31, at the section 387 jurisdictional and dispositional hearing, the social worker testified Michael's paternal aunt and uncle in Tennessee had contacted her for placement and she had initiated an ICPC evaluation of their home. ICPC approval for Michael's placement with his grandparents was pending. The State of Michigan required the grandparents to obtain a foster care license, which they were in the process of doing.

The social worker asked Michael, Sr., whether E.C. would be interested in caring for Michael. Michael, Sr., said he was not sure. His preferred placement for Michael was with his brother in Tennessee. The social worker was willing to evaluate E.C.'s home for placement if she expressed an interest in caring for Michael.

Michael, Sr., testified he talked to E.C. "a little bit" about caring for Michael. E.C. had never met Michael but was willing to build a relationship with him. To his knowledge, she did not contact the social worker about Michael's placement. Michael, Sr., was not opposed to placing Michael with his maternal grandparents provided that Michael could continue to visit his paternal relatives.

In closing argument, Michael, Sr., asked the juvenile court to order the Agency to evaluate E.C. for placement as an NREFM under section 362.7.

The juvenile court endorsed evaluating the maternal and paternal relatives for placement and said it would schedule a hearing if one or both of the

relatives were approved for placement. The court found that E.C. was not married to Michael, Sr., and was not considered Michael's relative. There was no evidence indicating Michael had a relationship with either E.C. or his half brother, and denied the request to evaluate E.C. for placement as an NREFM. The court ordered that family reunification services not be provided to Michael, Sr., because of the length of his incarceration and his lack of access to services in prison. The court found that Jennifer was making some progress with her case plan and continued her reunification services to the 12-month review date.

## DISCUSSION

Michael, Sr., contends the juvenile court erred when it did not order the Agency to investigate E.C.'s home for placement as an NREFM. He maintains that E.C. is his fiancée, and the mother of Michael's half brother, and thus she has an established familial relationship with Michael. He argues the court erred when it found that E.C. needed to be a relative or to have met Michael to qualify as an NREFM placement. Michael, Sr., argues the court did not consider other criteria including E.C.'s ability to offer Michael a familiar setting in San Diego County, assist with visitation with both parents, facilitate reunification with Jennifer and help Michael establish a relationship with his half brother.

### A

*Legal Framework and Standard of Review*

In 1995, recognizing the importance of continuity of community, school, church and friends to dependent children who have been removed from their families, the Legislature enacted section 362.7, which permits a county welfare department to place a dependent child in the home of an NREFM. (Stats. 1995, ch. 509, § 6, p. 3936; see *Samantha T. v. Superior Court* (2011) 197 Cal.App.4th 94, 108 [128 Cal.Rptr.3d 522] (*Samantha T.*).) An NREFM is defined as "any adult caregiver who has an established familial or mentoring relationship with the child." (§ 362.7.) NREFM's may include relatives of the child,[3] teachers, medical professionals, clergy, neighbors and family friends. (§ 362.7.)

---

[3] A relative is an adult who is related to the child by blood, adoption, or affinity within the fifth degree of kinship, including a parent, sibling, grandparent, aunt, uncle, nephew, niece, great-grandparent, great-aunt or -uncle, first cousin, great-great-grandparent, great-great-aunt or -uncle, first cousin once removed, and great-great-great-grandparent; a stepparent or stepsibling; and the spouse or domestic partner of any of the persons described above, even if the marriage or partnership was terminated by death or dissolution. (Cal. Rules of Court, rule

■ The county welfare department must verify the existence of a relationship between the child and the individual seeking NREFM status through interviews with the parent and child or with one or more third parties. (§ 362.7.) A child may not be placed with an NREFM unless that individual's home meets standards for the licensing of foster family homes. (*Ibid.*) Any placement with an NREFM must be in the child's best interests. (*Samantha T., supra*, 197 Cal.App.4th at p. 108.)

An NREFM placement may be appropriate in cases where the child does not have an existing relationship with the individual seeking NREFM status, if that individual has a close connection with the child's family and placement will further the legislative goals of allowing the child to remain in familiar surroundings, facilitating family reunification or providing a culturally sensitive environment to the child.[4] (*Samantha T., supra*, 197 Cal.App.4th at pp. 97, 108–109.) Thus an individual may qualify as an NREFM under the express terms of the statute or within the legislative goals of the statute. (*Id.* at p. 110.)

We review questions of the interpretation of a statute, and its application to undisputed facts, de novo. (*In re Fernando M.* (2006) 138 Cal.App.4th 529, 535 [41 Cal.Rptr.3d 511].)

B

*The Court Interpretation of NREFM Was Overly Narrow*

We are not persuaded by Michael, Sr.'s argument NREFM status is conferred through a mutual relative when there is no existing relationship between the child and the individual seeking NREFM status. By its plain terms, section 362.7 applies when the child has an existing relationship with the individual seeking NREFM status. (§ 362.7 ["county welfare department shall verify *the existence of a relationship* . . ." between the child and the individual seeking NREFM status (italics added)].) Nevertheless, we conclude that the juvenile court's interpretation of NREFM status did not fully comport with current law. (See *Samantha T., supra*, 197 Cal.App.4th at pp. 97, 108–109.)

---

5.502(31)(A).) "Affinity" means the connection existing between one spouse or domestic partner and the blood or adoptive relatives of the other spouse or domestic partner. (*Id.*, rule 5.502(1).)

[4] In view of the strong legislative goals to develop and maintain a dependent child's sibling relationships, the court may also consider the strength of the child's sibling relationships and whether placement with an individual with a close connection to the family would promote the sibling relationships. (See *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1003–1004, 1009 [61 Cal.Rptr.3d 403].)

The juvenile court declined to order the Agency to evaluate E.C.'s home for placement because she had never met Michael and Michael did not have any relationship with his half brother. If the child does not have an existing relationship with the individual seeking NREFM status, the court then considers whether that individual has a close connection with the child's family and whether the child's placement in the NREFM home will further the legislative goals of allowing the child to remain in familiar surroundings, facilitating family reunification or providing a culturally sensitive environment to the child. (*Samantha T., supra,* 197 Cal.App.4th at pp. 97, 108–109.) Here, to the extent the court considered the nature of Michael Sr. and E.C.'s relationship, it did not examine whether Michael's placement with E.C. would further the legislative goals of section 362.7, as discussed in *Samantha T.*

Notwithstanding the court's restrictive interpretation of section 362.7, we conclude that the juvenile court did not abuse its discretion when it denied the request to order the Agency to evaluate E.C.'s home for NREFM placement.

C

*The Juvenile Court Did Not Abuse Its Discretion When It*
*Declined to Order the Agency to Investigate E.C.'s Home*
*for Placement*

On this record, we cannot conclude the juvenile court erred when it declined to order the Agency to investigate E.C.'s home for placement. E.C. did not come forward to request Michael's placement in her home. The record supports the reasonable inference she was reluctant to take into her home a child she had never met and with whom she had no relationship. Thus, at the time of the hearing, E.C.'s home was not a viable placement for Michael. The record also supports a finding that Michael's placement with E.C. would not further the legislative goals of section 362.7. Michael had been living in a foster care home for approximately five months and had developed a close relationship with his caregivers. E.C. did not live in the same part of San Diego County as Michael's foster parents, and placement with her would disrupt his schooling and the continuity of his care, and separate him from his friends. The record shows that Michael had had multiple homes, schools and caregivers in a relatively short period of time. We draw the reasonable inference that Michael's need for continuity of care in a familiar environment was important to him. Absent a need for a change of placement, placing Michael with someone he did not know would not be in his best interests. (*Samantha T., supra,* 197 Cal.App.4th at p. 108.)

■ In addition, Michael had maternal and paternal relatives who wanted him in their care. (See § 361.3, subd. (c)(2) [preferential placement consideration given to a grandparent, aunt, uncle or sibling].) Their ICPC home studies were in progress. A social worker is required to consider an NREFM for placement only when there is not a custodial parent, a relative given preferential consideration or a relative who is willing and able to provide appropriate care for the child. (§§ 361.2, subd. (e), 361.3.) Both Michael's mother and father expressed a preference for Michael to live with relatives. Michael had a close relationship with his maternal grandparents. At the time of the hearing, he had just returned from an extended visit in their home. Michael said if he could not live with his mother, he would want to live with his grandparents. Thus the record supports a finding that placement with E.C. would not further the legislative goals underlying section 362.7. (*Samantha T., supra,* 197 Cal.App.4th at pp. 97, 108–109.)

A judgment may not be reversed on appeal unless the reviewing court, after examining the entire cause, including the evidence, concludes that the error caused a miscarriage of justice. (Cal. Const., art. VI, § 13.) We conclude that it was not reasonably probable a result more favorable to the appellant would have been reached in the absence of error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## DISPOSITION

The order is affirmed.

Haller, J., and McIntyre, J., concurred.