Filed 4/19/13  In re A.L. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | B244509 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>J.L.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK46624) |

APPEAL from an order of the Superior Court of Los Angeles County.  Elizabeth Kim, Referee.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and William D. Thetford, Deputy County Counsel, for Respondent.

_____

Appellant J.L. (father) appeals from the October 1, 2012 order denying his request that his dependent daughter, A.L., be removed from foster care and placed with father's childhood friend, T.D. Father contends the juvenile court erred in finding that T.D. was not a "nonrelative extended family member" (NREFM) within the meaning of the Welfare and Institutions Code.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was incarcerated when two-day-old A.L. was detained in February 2012, after mother tested positive for cocaine. Appellant was found to be A.L.'s presumed father. A.L. was four days old when she was placed with non-relative caregivers B.F. and S.F. (the foster parents).

As sustained by the juvenile court following a March 19 jurisdictional hearing, paragraph b-1 of the section 300 petition alleged that A.L. had suffered or there was a substantial risk she would suffer serious physical harm or illness because mother had a long history of illegal drug use, was currently using illicit drugs, had tested positive for cocaine while pregnant with A.L., and had failed to reunify with several other children. The petition also alleged father knew or should have known about mother's drug use and failed to protect A.L. Additional allegations alleged pursuant to section 300, subdivisions (b) and (g) were dismissed.[2]

Father told the social worker that he intended to do everything he could to regain custody of A.L. A paternal aunt expressed interest in having A.L. placed with her. But mother was adamantly opposed to placement with the paternal aunt, whom mother claimed was a current drug abuser. Mother wanted A.L. placed with a maternal aunt.

---

[1]    All future undesignated statutory references are to the Welfare and Institutions Code.

[2]    Both parents appeared at the jurisdictional hearing, although father was still incarcerated. Father denied the allegations and mother submitted on the petition. Because of her failure to reunify with other children, mother was not given reunification services. She subsequently lost contact with her appointed counsel and is not a party to this appeal.

Although the maternal aunt told the social worker that at the age of 50 she did not want to raise another child, she would do so in order to keep the family together. DCFS recommended that A.L. remain with the foster parents and that father receive reunification services. The juvenile court set the matter for a May 14 progress hearing on father's incarceration status and participation in reunification services followed by a six-month review hearing on September 17.

By the time of the May 14 progress hearing, father was still incarcerated and had not participated in any parenting program available at the detention center where he was located. However, he still hoped to reunify with A.L. Beginning in mid-August, the foster parents took A.L. to the jail every other weekend to visit father.

In advance of the September 17 six-month hearing, DCFS began investigating placement of A.L. with father's childhood friend, T.D., pursuant to section 362.7 which allows the social worker to place dependent children with a NREFM under certain circumstances. Upon learning of the potential change in placement, the foster parents filed a section 388 petition seeking an order requiring DCFS to obtain prior court approval for any change in placement. Before the hearing, DCFS's placement plans were derailed when the social worker discovered that T.D. had never met A.L., thus disqualifying her as being a NREFM. Based on this new information, DCFS recommended in a Last Minute Information filed the day of the hearing that A.L. remain placed with the foster parents.

T.D. was present at the September 17 hearing, as was the foster mother and her counsel. A.L.'s counsel objected to father's request that A.L. be placed with T.D., arguing that T.D. was not a NREFM, and that A.L. was doing well with the foster parents who were facilitating visits with father. Thus the change would not be in A.L.'s best interests. The juvenile court continued the matter to October 1, for a contested hearing on whether T.D. qualified as a NREFM pursuant to section 362.7, and if so, whether A.L. should be placed with T.D. Pending the continued hearing, the court ordered monitored visits for T.D. It also summarily denied the foster parents' section 388 petition.

At the continued hearing, T.D. testified that she was raised with father, whom she thought of as her cousin although they were not related. T.D. met A.L. for the first time on September 21, four days after the last hearing, and saw her a second time on September 26. Both visits lasted an hour. T.D. felt that she had bonded with A.L. during those two visits. T.D. was told about A.L.'s special needs by the social worker; specifically, that A.L.'s physical development was not normal and that she was receiving physical therapy. But A.L. looked normal to T.D. Although T.D. worked nights and lived in San Bernardino, she would be able to bring A.L. to Los Angeles to continue her treatments here. T.D.'s 20-year-old daughter would care for A.L. while T.D. was at work.

Counsel for A.L. and DCFS opposed any change in placement, reiterating the argument that T.D. did not qualify as a NREFM and the move would not be in A.L.'s best interest. DCFS also urged the juvenile court to reject the placement because father and T.D. had colluded to misrepresent T.D. as a cousin. Father argued in favor of the change because T.D. had visited A.L. twice.

The juvenile court found T.D. did not qualify as a NREFM. Notwithstanding her close relationship with father, T.D. did not have an established relationship with A.L. after just two visits. The court concluded that it would not be in A.L.'s best interest to be removed from her foster parents and placed with T.D. Father timely appealed.[3]

---

**3** DCFS's motion to dismiss the appeal is denied. Father was aggrieved by the order that A.L. remain placed with the foster parents and not placed with T.D. because placing a child with a NREFM may improve the prospects of reunification for the parent with ties to the NREFM. (§ 395, subd. (a)(1) [any order subsequent to the judgment in a dependency proceeding may be appealed as an order after judgment]; *In re S.B.* (2009) 46 Cal.4th 529 [the dispositional order is the "judgment" in a dependency proceeding]; *In re Michael E. Jr.* (2013) 213 Cal.App.4th 670 (*Michael E.*) [appeal from order denying father's fiancée § 362.7 status]; see also *In re T.G.* (2010) 188 Cal.App.4th 687, 692 [finding that reasonable services had been provided to father was appealable because it was adverse to father's interests in reunification].)

4

**DISCUSSION**

A.      *Standard of Review*

The parties disagree on the appropriate standard of review: father argues that it is abuse of discretion while DCFS argues it is de novo. In *In re Michael E., Jr., supra,* published after the briefs in this case were filed, the court applied the de novo standard of review to the question of whether the juvenile court erred in finding the father's fiancée did not qualify as a NREFM. We agree that interpretation of section 362.7 and the statute's application to undisputed facts is subject to de novo review. But even under the abuse of discretion standard, we would find no error.

B.      *The Juvenile Court Correctly Ruled T.D. Was Not A NREFM*

Father contends the trial court erred when it found T.D. was not a NREFM. He argues that T.D. qualified because she had a strong familial-like bond with father and that T.D. and A.L. "had begun to develop their own relationship. [T.D.] had begun visitation with [A.L.] Their two visits went well. They had fun playing together. [A.L.] appeared to warm to [T.D.] given that she played more during the second visit." We find no error.

The court must make orders for the care and custody of a child adjudged a dependent child. (§ 361, subd. (a).) When a child is ordered removed from his or her parents, the court must place the child under the supervision of the social worker, who may make any one of four specified placements. (§ 361.2, subd. (e.).) The only specified placement option relevant to the issues on appeal is: "the approved home of a nonrelative extended family member as defined in Section 362.7." (§ 361.2, subd. (e)(3).) Section 362.7 defines a NREFM as "any adult caregiver who *has an established familial or mentoring relationship with the child. The county welfare department shall verify the existence of a relationship* through interviews with the parent and child or with one or more third parties. The parties may include relatives of the child, teachers, medical professionals, clergy, neighbors, and family friends." (Italics added.)

5

Notwithstanding the unambiguous statutory language, the court in *Samantha T. v. Superior Court* (2011) 197 Cal.App.4th 94, 110, observed: "Arguably, based on the Legislature's findings with respect to family reunification and racial or ethnic identification, a familial relationship with a minor's family, even in the absence of a relationship with a minor, might be sufficient to meet the requirements of section 362.7." But the court found that was not the case in *Samantha T.* In that case, dependent sisters challenged an order removing them from the foster mother with whom they had bonded and placing them with Megan, a family friend with whom the girls did not have a close relationship. (*Id*. at p. 97.) The court held: "Megan does not qualify as a NREFM because she does not have a close relationship with the minors themselves. Moreover, this is not a case in which we can consider extending the statute beyond its express terms because the placement here was not made in order to either enhance family reunification or as a means of placing the two minors in a home sensitive to their backgrounds." (*Ibid*.)

The court in *Michael E., supra*, adopted the dicta in *Samantha T.* as the rule. It held: "A NREFM placement may be appropriate in cases where the child does not have an existing relationship with the individual seeking NREFM status, if that individual has a close connection with the child's family and placement will further the legislative goals of allowing the child to remain in familiar surroundings, facilitating family reunification or providing a culturally sensitive environment to the child.[] [Citation.] Thus an individual may qualify as a NREFM under the express terms of the statute or within the legislative goals of the statute. [Citation.]" (*Michael E., supra,* 213 Cal.App.4th at p. 675.) However, any placement must still be in the child's best interest. (*Ibid*.) In *Michael E.*, the incarcerated father asked that his fiancée, who was also the mother of the child's infant half-sibling, be evaluated for placement even though she had never met the child. The appellate court agreed that the fiancée did not qualify as a NREFM under the express terms of section 362.7, but that the juvenile court should have also considered whether the fiancée had a close connection with the child's family and whether the child's placement in the NREFM home would further the legislative goals of allowing the

6

child to remain in familiar surroundings, facilitating family reunification or providing a culturally-sensitive environment to the child. (*Id*. at p. 676.) Like the court in *Samantha T.*, however, the court in *Michael E.* concluded that, although the juvenile court interpreted section 362.7 too narrowly, it was not an abuse of discretion for it to decline to order the agency to investigate the fiancée. This was because the fiancée did not personally come forward to request the child's placement in her home, the five-year old-child had been living with the foster parents for five months and developed a close relationship with them, the fiancée did not live in the same part of town as the foster parents and placement with the fiancée would disrupt the child's schooling and continuity of care in a familiar environment. The court concluded: "Absent a need for a change of placement, placing [the child] with someone he did not know would not be in his best interests. [Citation.]" (*Ibid*.)

Here, notwithstanding her apparently close bond with father, T.D.'s relationship with A.L. after just two visits simply does not qualify as an "established familial or mentoring relationship." For this reason, T.D. was not a NREFM within the express terms of section 362.7.

Even if we were to adopt the reasoning in *Samantha T.* and *Michael E.* that section 362.7 should be interpreted to include nonrelated extended family members who have no relationship with the child – a point we do not decide – we would find no error. The trial court reasonably concluded that removing A.L. from her foster parents and placing her with T.D. would not be in A.L.'s best interest. No evidence was presented that removal would further the legislative goals of allowing A.L. to remain in familiar surroundings, facilitating family reunification or providing a culturally-sensitive environment to her. As in *Michael E.*, there was no need for a change in A.L.'s placement. She was thriving with the foster parents who were meeting all of her special needs. It was not clear that T.D. understood A.L.'s special needs, much less that she could meet them. In fact, T.D. intended that significant caregiving would be provided not by T.D. but by her 20-year-old daughter. The foster parents were also facilitating reunification by regularly taking A.L. to visit father at his place of incarceration every

7

other weekend.  Since the foster parents and A.L. were all African American, there was no question that the foster parents could provide a "culturally-sensitive environment" to A.L.  Under these circumstances, there was nothing to show that the change in placement requested by father would be in A.L.'s best interests.

## DISPOSITION

The order appealed from is affirmed.


RUBIN, J.

WE CONCUR:


BIGELOW, P. J.


FLIER, J.