Filed 9/10/15  In re I.C. CA2/8
Opinion following rehearing

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re I.C., a Person Coming Under the Juvenile Court Law. | B258361 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK05709) |
| Plaintiff and Respondent, | |
| v. | |
| DAVIDSON C., | |
| Defendant and Appellant; | |
| BARRINGTON S. | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Teresa Sullivan, Judge.  Affirmed as modified.

Karen J. Dodd, under appointment by the Court of Appeal, for Appellant.

Nancy Rabin Brucker, under appointment by the Court of Appeal, for Respondent.

_____

Appellant Davidson C. (father) is the non-offending, presumed father of four-year-old I.C. Father appeals from the juvenile court order granting mother's male companion, respondent Barrington S., visitation with I.C. Barrington S. counters that father forfeited the issue and, even if he did not, the juvenile court acted within its authority. The Department of Children and Family Services (DCFS) has taken no position in the appeal. Mother has not filed a Respondent's Brief. We reverse the order granting Barrington visitation with I.C.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father were not married when I.C. was born in August 2010. I.C. was born during an interlude in mother's decade-long, intermittent relationship with Barrington, who is the biological father of I.C.'s half-sibling, Z.M., born in July 2013. Half-sibling, A.M. was born in September 2007; the whereabouts of her biological father, Brandon P., were unknown. A.M. was raised to believe that Barrington was her father.[1]

Mother, Barrington and the children have a long history in the dependency system. Mother and Barrington were themselves dependent children. Barrington was born addicted to drugs and later diagnosed with Schizophrenic Disorder and Intermittent Explosive Disorder. Mother was diagnosed with Bipolar Disorder, anxiety and depression. Beginning with half-sibling A.M. in 2008, the children have been the subject of 13 referrals to DCFS. From May 2011 until April 2012, mother participated in a Voluntary Family Maintenance plan.

A severe incident of domestic violence between Barrington and mother led to all three children being detained in May 2014. According to the police report of the incident, I.C. stated he "heard yelling and indicated he was pushed onto the bed. [I.C.] said he was hurt by 'the Black guy.' He said the 'Black guy' pushed him on the bed.

---

[1]    Collectively, we refer to A.M. and Z.M. as the half-siblings; we refer to the half-siblings and I.C. collectively as the children.

[I.C.] stated he saw 'the Black guy' hit his mom on the neck." By "the Black guy," the social worker understood I.C. to be referring to Barrington.

As eventually sustained, an amended petition based Welfare and Institutions Code section 300, subdivision (b) dependency jurisdiction on domestic violence between mother and Barrington, Barrington's substance abuse, mother's untreated emotional disorders, and specific incidents of mother and Barrington failing to adequately supervise the children.[2]

At the detention hearing on May 9, 2014, father was found to be I.C.'s presumed father and I.C. was released to him; because father was then homeless, he made arrangements for I.C. to live with paternal grandmother. The half-siblings were placed in foster care. Barrington was found to be Z.M.'s presumed father and was given monitored visitation with both Z.M. and A.M. As to I.C., Barrington did not request any relationship findings (alleged father, presumed father or de facto parent) or visitation.

After father tested positive for marijuana prior to the disposition hearing, he consented to I.C. being detained from him and placed by DCFS with paternal grandmother, where he was already living. Following a May 22, 2014 hearing on DCFS's petition to change the prior order, I.C. was placed with paternal grandmother; father was given unmonitored visits on the condition that he complete two consecutive negative drug tests.

On June 23, 2014, the amended section 300 petition was sustained following mother's and Barrington's no contest pleas. Father was non-offending (an allegation that he abused marijuana and opiates was dismissed). All three children were placed under the care and custody of DCFS; I.C. remained placed with paternal grandmother and father was given reunification services, including monitored visits with I.C. Barrington

---

**2**     All future undesignated statutory references are to the Welfare and Institutions Code.

3

requested that he also have visitation with I.C.<sup>3</sup> The children's counsel did not object, but suggested any such visits take place in "a controlled environment" because of animosity between father and Barrington. Father's counsel stated: "Your Honor, [father] would join in that request [by DCFS that Barrington's visits be monitored], only to add further that it appears [Barrington] is not a presumed – [Barrington] is not a presumed father in this [i.e. I.C.'s] case. [¶] Therefore, I'm not sure if has full parental rights as to – I'm guessing the Court is well aware [father] does not like the prospect of [Barrington] meeting [I.C.] when he's only the alleged father and not the presumed father. [¶] In order to just avoid complications altogether, it may be best to see any visitation from [Barrington] as a detriment."

Observing that Barrington had been asserting a "significant" relationship with all three children all along, the juvenile court ordered the Department to "facilitate a written visitation schedule [for Barrington and I.C.] and a report so [father] will have an opportunity to make his position known to the social worker regarding visitation. [¶] [Barrington ] is not to contact [father] in any way, or his family or [the] caretaker. [¶] This all goes through the social worker. [¶] So the social worker will provide an investigation regarding visitation, and a written visitation schedule for [Barrington] with [A.M and I.C.] [¶] I'm not making any minimum order or maximum order for those visitations; only that the Department investigates and creates some sort of visitation schedule."

Father timely appealed.

---

<sup>3</sup>     Barrington also requested visitation with A.M., whom Barrington had been visiting all along. The children's counsel agreed, observing that A.M. recognized Barrington as her father. Barrington's counsel incorrectly stated that Barrington had been visiting with I.C. all along.

4

**DISCUSSION**

A.  *There Was No Forfeiture*

Barrington contends father forfeited any challenge to the order granting Barrington visitation with I.C. because father did not object to the order at the disposition hearing on June 23, 2014.  The record is to the contrary.  Regarding Barrington's visitation request, father's counsel's stated that father, "does not like the prospects of [Barrington] meeting [I.C.] when he's only the alleged father and not the presumed father.  [¶]  In order to just avoid complications altogether, it may be best to see any visitation from [Barrington] as a detriment."  This statement was sufficient to preserve the issue for appeal.

B.  *Statutory Overview*

We begin with a brief overview of the Juvenile Court Law, which is set forth in Chapter 2, commencing with section 200 of the Welfare and Institutions Code.  The dependency scheme has three primary goals:  (1) protect the child; (2) preserve the family and safeguard the parents' fundamental right to safely raise their child; and (3) provide a stable, permanent home for the child.  (*In re James R.* (2007) 153 Cal.App.4th 413, 430, fn. 5.)  The juvenile court's powers " 'are limited to those granted by the Juvenile Court Law [citation] plus those incidental thereto.  [Citations.]' " (*In re M.B.* (2011) 201 Cal.App.4th 1057, 1063-1064; *In re Jody R.* (1990) 218 Cal.App.3d 1615, 1622-1623 [" 'In the absence of such specific statutory authorization, a juvenile court is vested with authority to make only those determinations which are "incidentally necessary to the performance of those functions demanded of it by the Legislature pursuant to the Juvenile Court Law." ' [Citation.]"].)

With exceptions not relevant here, the juvenile court is required by statute to order the social worker to provide child welfare services to the child, mother and statutorily presumed father whenever it removes the child from a parent's custody.  (§ 361.5, subd. (a); *In re A.M.* (2013) 217 Cal.App.4th 1067, 1074 [" '[T]he general rule is that when a dependent child is removed from the parent's or guardian's physical custody,

5

child welfare services, including family reunification services, must be offered.' [Citation.]"].)  Child welfare services includes reunification services which "are typically understood as a benefit provided to parents, because services enable them to demonstrate parental fitness and so regain custody of their dependent children.  [Citation.]"  (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228.)  Generally, only presumed fathers (not biological or alleged) are entitled to reunification services.  (*In re Zacharia D.* (1993) 6 Cal.4th 435, 450.)

Visitation is a necessary and integral component of any reunification plan.  (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1489; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1138 [reunification services include visitation between a dependent child and his or her parents].)  Two statutes govern visitation during ongoing dependency proceedings: section 362.1 and 361.2.**4**

We begin with section 362.1, which governs visitation orders made at the time of the dispositional hearing.  As relevant, that section provides:

> "(a) In order to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian, or to encourage or suspend sibling interaction, any order placing a child in foster care, and ordering reunification services, shall provide as follows:
>
> (1)(A) [Unless it jeopardizes the child's safety] for visitation between the parent or guardian and the child.  Visitation shall be as frequent as possible, consistent with the well-being of the child.
> . . .

---

**4**     Visitation orders during ongoing dependency proceedings should be distinguished from visitation orders at the termination of juvenile court jurisdiction.  When juvenile court jurisdiction is terminated, section 362.4 authorizes the juvenile court to issue visitation orders.  Several courts have held section 362.4 authorizes the juvenile court to order visitation between a child and a non-parent or sibling, even over the objection of a parent who has been given legal and physical custody of the child.  (*In re J.T.* (2014) 228 Cal.App.4th 953 [visitation for paternal grandmother over mother's objection]; *In re Hirenia C.* (1993) 18 Cal.App.4th 504 [mother's former partner]; *In re Robin N.* (1992) 7 Cal.App.4th 1140 [de facto parent].)

6

(2) [To facilitate placing sibling groups together and to maintain sibling relationships], for visitation between the child and any siblings, unless the court finds by clear and convincing evidence that sibling interaction is contrary to the safety or well-being of either child."[5]

Next, we turn to section 361.2. Whenever a child has been removed from parental custody, subdivision (i) of that statute tasks the juvenile court with considering "whether the family ties and best interest of the child will be served by granting visitation rights to the child's grandparents. The court shall clearly specify those rights to the social worker." (§ 361.2, subd. (i).)

Thus, the juvenile court is expressly authorized to order visitation for the mother, presumed father and siblings if not detrimental to the child, and for grandparents if it would be in the child's best interest. Nothing in the Juvenile Court Law either expressly authorizes or precludes the juvenile court from ordering visitation for non-related adults. As we shall explain, juvenile court authority to make visitation orders for two categories of non-related persons – de facto parents and non-relative extended family members (NREFM) – has been found to be incidentally necessary to achieving the goals of dependency (protecting the child; preserving the family and safeguarding the parents' fundamental right to safely raise the child; and providing a stable, permanent home for the child).

### 1. De Facto Parent

A "person becomes a de facto parent by application to the court when he or she has participated in the day-to-day care and rearing of the child over an extended period of time. [Citations.]" (*Clifford S. v. Superior Court* (1995) 38 Cal.App.4th 747, 751; see

---

**5** The term "foster care" includes the home of a relative with whom the child has been placed by DCFS. (See Cal. Rules of Court, rule 5.502(14) [defining "Foster care" as residential care provided in *any of the settings described in section 11402*]; § 11402, subd. (a)(1) ["The approved home of a relative . . . ."]; § 11402, subd. (b)(2) ["The approved home of a nonrelative extended family member as described in Section 362.7."]; see also § 11400, subd. (f) ["Foster care" means "the 24-hour out-of-home care provided to children whose own families are unable or unwilling to care for them, and who are in need of temporary or long-term substitute parenting."].)

Cal. Rules of Court, rule 5.502(10) ["De facto parent" means a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period."].) Although a de facto parent has no *right* to reunification services, including visitation, the juvenile court may order visitation for a de facto parent if it would be in the dependent child's best interests. (See *Clifford S.,* at pp. 751-752 [de facto parent has no right to visitation]; *In re Robin N.*, *supra*, 7 Cal.App.4th at p. 1144 [juvenile court may order visitation for de facto parent].) This is true even over the objection of the biological or adoptive parent. The court in *In re Hirenia C., supra,* 18 Cal.App.4th at page 519, explained: " 'As strong as the rights of such parents must be, there may be instances in which the child would be significantly harmed by completely terminating his or her relationship with a person who has (1) lived with the child for a substantial portion of the child's life; (2) been regularly involved in providing day-to-day care, nurturance and guidance for the child appropriate to the child's stage of development; and (3) been permitted by a biological [or adoptive] parent to assume a parental role. The needs of the child, which are the most important consideration, may sometimes require that a visitation award be made to such a "de facto parent." ' [Citation.]"

### 2. Non-Relative Extended Family Member

The juvenile court also has authority to order visits between the child and a non-relative extended family member. If there is no relative willing to provide care, a dependent child may be placed with a NREFM, defined as "as an adult caregiver who has an established familial relationship with a relative of the child . . . or a familial or mentoring relationship with the child." (§ 362.7; *In re R.T.* (2015) 232 Cal.App.4th 1284, 1298.) A "NREFM placement may be appropriate even if the only connection is between a NREFM and a minor's family. However, under our child dependency scheme, even when a person falls within the scope of the NREFM statute, an order placing a child with the NREFM must be in the best interest of the child." (*Samantha T. v. Superior Court* (2011) 197 Cal.App.4th 94, 97.) Since the child and the NREFM need not know

8

one another if the juvenile court finds the placement would be in the child's best interest (*In re Michael E.* (2013) 213 Cal.App.4th 670, 676), it goes without saying that the juvenile court may order pre-placement visits between a dependent child and a potential NREFM caregiver if it believes such visits would facilitate its "best interests" analysis.

Barrington did not ask the trial court to make a finding that he is either a de facto parent or a NREFM. He has cited no case, and our independent research has found none, expressly authorizing the juvenile court to order visitation for a non-related adult other than a de facto parent or prospective NREFM during ongoing dependency proceedings. The case relied upon by Barrington, *Robin N., supra*, 7 Cal.App.4th 1140, involved a visitation order for a de facto parent upon termination of dependency court jurisdiction and is therefore inapposite to this case. But we need not decide the issue here because, even assuming the juvenile court has authority to order visitation for a non-related adult other than a de facto parent or NREFM, we agree with father that it was an abuse of discretion to order visitation for Barrington in this case.

## C.      *The Visitation Order Was an Abuse of Discretion*

Visitation orders in dependency cases are reviewed for abuse of discretion and will not be reversed absent a "clear showing of abuse of discretion." (*In re Alexandria M.* (2007) 156 Cal.App.4th 1088, 1095-1096.) The test is whether the juvenile court " ' "exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." [Citation.]' [Citations.]" (*Ibid.*) Under the abuse of discretion standard, findings of fact are reviewed for substantial evidence. (*In re A.R.* (2015) 235 Cal.App.4th 1102, 1117.)

We conclude the juvenile court abused its discretion in two respects. First, the juvenile court's stated factual basis for the visitation order – Barrington had been asserting a "significant" relationship with all three children all along – is unsupported by the evidence. Barrington had not asserted any relationship with I.C. prior to the

9

jurisdiction hearing; he never requested any parental status finding vis-à-vis I.C. and had not previously requested visitation with I.C.

Second, there was no evidence that any of the circumstances identified by the court in *Hirenia C., supra*, 18 Cal.App.4th at page 519, which would support ordering visitation with a non-related adult, are present in this case. Those circumstances are that " 'the child would be significantly harmed by completely terminating his or her relationship with a person who has (1) lived with the child for a substantial portion of the child's life; (2) been regularly involved in providing day-to-day care, nurturance and guidance for the child appropriate to the child's stage of development; and (3) been permitted by a biological [or adoptive] parent to assume a parental role.' " (*Ibid.*) Here, there was no evidence of how long four-year-old I.C. had been living with mother and Barrington when the children were detained in May 2014; as such, there was no showing that I.C. had lived with Barrington for a substantial portion of his life. Nor was there any evidence that Barrington had assumed a parental role in I.C.'s life or provided I.C. day-to-day care, much less nurturance and guidance. On the contrary, the fact that I.C. referred to Barrington as "the Black guy" who hit his mother and hurt him, suggests I.C. had little, if any, relationship with Barrington. Absent evidence that I.C. would be harmed by terminating his relationship with Barrington, much less reap any benefit from continuing that relationship, the juvenile court abused its discretion in ordering visits for Barrington with I.C.

## DISPOSITION

The June 23, 2014 order is modified by striking that part of the order granting Barrington visitation with I.C. As modified, the order is affirmed.


                                                        RUBIN, J.
WE CONCUR:


                    BIGELOW, P. J.                                    FLIER, J .

10