Filed 7/17/15  Certified for publication 8/5/15 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re JOSHUA A., a Person Coming Under the Juvenile Court Law. | |
| | D067498 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3656) |
| v. | |
| CHARLOTTE A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Jennifer Stone, Deputy County Counsel, for Plaintiff and Respondent.

Charlotte A. challenges the finding that her boyfriend, Luis O., did not qualify as a nonrelative extended family member (NREFM) for placement of her son Joshua A. She contends the juvenile court erred as a matter of law when it ruled a parent is not a relative within the meaning of Welfare and Institutions Code section 361.3, subdivision (c)(2)[1] for purposes of determining NREFM status. Charlotte also argues the juvenile court erred when it did not order the San Diego County Health and Human Services Agency (Agency) to evaluate Luis's home as a placement option for Joshua.

The Agency agrees the juvenile court misinterpreted section 362.7 when it ruled Luis was not an NREFM. The Agency contends the error was harmless because the juvenile court found it was not in Joshua's best interests to be placed with Luis, which would have disqualified the placement had the court correctly determined Luis's NREFM status.

We conclude the juvenile court erred as a matter of law when it ruled a parent is not a relative within the meaning of 361.3, subdivision (c)(2) for purposes of determining NREFM status within the meaning of section 362.7. The statutory scheme clearly allows a person who has an established familial relationship with a parent of the dependent child to qualify as an NREFM. However, the court did not abuse its discretion when it determined placement with Luis was not in Joshua's best interests. Because placement was not in Joshua's best interests notwithstanding Luis's status as an NREFM, the court

---

1    Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

was not required to direct the Agency to complete its evaluation of his home. We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Joshua is the 13-year-old son of Charlotte. In October 2014, Joshua was removed from his mother's care after she became intoxicated and scratched and pinched him. Police officers observed that Charlotte was "delirious" and "obviously intoxicated." Charlotte denied she had a drinking problem.

The Agency filed a section 300 petition on Joshua's behalf. In its court report, the Agency detailed seven earlier referrals to child protective services concerning Joshua's safety, and Joshua's prior adjudication as a juvenile court dependent. All those referrals, as well as the previous dependency, resulted from Charlotte's drinking. In 2011, Charlotte was arrested for driving under the influence with Joshua in the car. In 2012, Joshua found Charlotte unresponsive. She was hospitalized with a blood alcohol level of .233. In 2013, Joshua was afraid to return home. Charlotte could be physically abusive when intoxicated. Joshua was declared a dependent of the juvenile court. He remained with his mother under a plan of family maintenance services. Charlotte completed services and the juvenile court terminated jurisdiction six months later.

When the current dependency proceeding was initiated, the social worker asked Charlotte for placement options for Joshua.[2] Charlotte identified her boyfriend Luis. Luis did not have any criminal or child protective history. Charlotte brought Luis with

---

[2]    Joshua did not have a significant relationship with his father, who lived in another state.

her to visit Joshua after he was detained. Joshua was happy to see his mother but was uncomfortable with Luis. He asked the social worker if Luis was allowed to yell at him. Charlotte told Joshua she could visit him another time. Joshua chose to end the visit early. Joshua told the social worker he wanted some time away from his mother and hoped she would obtain treatment so she would not drink. He did not want to live with Luis. Joshua said Luis was very strict and had called him "stupid."

At the contested disposition hearing, the social worker testified the Agency had completed Luis's initial background checks and social interview, and concluded it was not in Joshua's best interests to be placed with Luis. When the social worker tried to discuss placement, Joshua said he was uncomfortable with Luis and did not want to be alone with him in a home. The Agency did not recommend the placement because Charlotte and Luis's relationship was of relatively short duration, Luis did not realize Charlotte had a drinking problem, and Joshua was not comfortable with Luis and did not want to live with him. The social worker said she was concerned that Luis's relationship with Charlotte was not stable and Luis would not be committed to Joshua were he not with Charlotte. Charlotte informed a police officer that problems in her relationship with Luis had led to her drinking. Luis did not contact the social worker to inquire about Joshua's well-being or to request visits. The social worker said the Agency did not complete an assessment of Luis's home because it did not intend to place Joshua with him.

Luis testified he and Charlotte had been dating for approximately a year and a half. He stayed with her in her home one or two nights a week. They were still dating.

4

However, their relationship was "on hold" to allow each of them to work through personal issues. Luis said he could assure Charlotte did not drink when Joshua was present. He would follow court orders, cooperate with the Agency and report any lapses in Charlotte's behavior. Luis said his and Joshua's relationship was "good for the most part" and described the activities and experiences they shared, including playing Frisbee and catch, and swimming and hiking. If he could, he helped Joshua with his homework. Joshua was a "very, very good kid" but acted defiantly toward his mother. Luis denied calling Joshua "stupid." He said he did not talk that way to children. Luis did not understand why Joshua would not want to live with him. He had the means to support Joshua and could provide a stable residence for him, as well as adult guidance.

Luis said he had not been aware of Charlotte's alcoholism but now realized the extent of her problem. He acknowledged drinking with her. Charlotte became a little tipsy on occasion but he did not recall her being drunk. Her drinking was typical for anyone who drank. He did not believe Charlotte was a danger to Joshua. Luis acknowledged telling the social worker he could not provide a long-term placement for Joshua. He had changed his mind and was willing to have Joshua live with him long-term if necessary. Luis said it was "more [Charlotte's] idea" to have Joshua live with him.

The juvenile court asked the parties whether a parent was included in the definition of a relative under section 361.3, subdivision (c)(2). County counsel and mother's attorney said it did. Minor's counsel argued the Legislature did not intend to include a parent in the definition of a relative under section 361.3, subdivision (c)(2),

5

pointing out other statutes in the dependency code distinguish between a parent and a relative.

The juvenile court found that under a strict interpretation of section 361.3, subdivision (c)(2), Luis did not meet the description of an NREFM because the term "parent" was not included in the definition of a relative. Further, Luis was not entitled to NREFM status because he did not have a familial or mentoring relationship with Joshua. Joshua had a negative reaction to Luis. Placing a teenager in a home in which he was uncomfortable could be destabilizing. The court was not willing to conduct "a grand experiment" at the risk of having to find multiple placements for Joshua. The court also questioned Luis's ability to recognize Charlotte's alcoholism and protect Joshua. Even if Luis qualified as an NREFM, the court would not place Joshua with Luis.

DISCUSSION

A

*Applicable Law and Issues Raised*

Where, as here, a child has been removed from a parent's care under section 361, and the child is not placed with a noncustodial parent or relative, the social worker may place the child in the approved home of an NREFM. (*Samantha T. v. Superior Court* (2011) 197 Cal.App.4th 94, 108 (*Samantha T.*); *In re R.T.* (2015) 232 Cal.App.4th 1284, 1298-1299.) Section 362.7 defines an NREFM as "an adult caregiver who has an established familial relationship with a relative of the child, as defined in [section 361.3, subdivision (c)(2)], or a familial or mentoring relationship with the child." A relative is

"an adult who is related to the child by blood, adoption, or affinity[3] within the fifth degree of kinship, including stepparents, stepsiblings, and all relatives whose status is preceded by the words 'great,' 'great-great,' or 'grand,' or the spouse of any of these persons even if the marriage was terminated by death or dissolution."[4] (§ 361.3, subd. (c)(2).)

Charlotte contends Luis is Joshua's NREFM under either definition of section 362.7. She argues the juvenile court erred when it found that she was not a relative of the child, as that term is defined in section 361.3, subdivision (c)(2), for purposes of determining NREFM status. Charlotte states a parent is within "the fifth degree of kinship" (ibid.) and thus is a relative of the child. She argues Luis qualifies as an NREFM because he had an established familial relationship with her or alternatively, because he had a familial or mentoring relationship with Joshua. (§ 362.7.)

---

3       " 'Affinity' " means the connection existing between one spouse or domestic partner and the blood or adoptive relatives of the other spouse or domestic partner. (Cal. Rules of Court, rule 5.502(1).) (Further rule references are to the California Rules of Court.)

4       See also rule 5.502(34): " 'Relative' means[:]
(A) An adult who is related to the child by blood, adoption, or affinity within the fifth degree of kinship. This term includes:
        (i) A parent, sibling, grandparent, aunt, uncle, nephew, niece, great-grandparent, great-aunt or -uncle (grandparents' sibling), first cousin, great-great-grandparent, great-great-aunt or -uncle (great-grandparents' sibling), first cousin once removed (parents' first cousin), and great-great-great-grandparent;
        (ii) A stepparent or stepsibling; and
        (iii) The spouse or domestic partner of any of the persons described in subparagraphs (A)(i) and (ii), even if the marriage or partnership was terminated by death or dissolution; or
(B) An extended family member as defined by the law or custom of an Indian child's tribe. (25 U.S.C. § 1903(2).)"

7

B

*Standard of Review and Principles of Statutory Interpretation*

The primary argument on appeal involves an issue of statutory interpretation, which we review de novo. (*In re D.S.* (2012) 207 Cal.App.4th 1088, 1097 (*D.S.*).)

In ascertaining legislative intent, we look first to the words of the statute, giving effect to their plain meaning. (*In re P.A.* (2011) 198 Cal.App.4th 974, 979.) If the statutory language is clear and unambiguous, we presume the Legislature meant what it said and the plain meaning of the statute governs. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103.) We construe the language in the context of the statute as a whole and the overall statutory scheme, and give significance to every word, phrase, sentence and part of an act in pursuing the legislative purpose. (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57.) Where the Legislature refers to a particular statute containing a word or phrase, the omission of another word or phrase in that statute, or the lack of reference to another statute dealing with the same general subject matter, shows a different legislative intent. (*In re E.M.* (2014) 228 Cal.App.4th 828, 844.) We avoid construing a statute in a manner that would render parts of the statute surplusage. (*D.S., supra,* 207 Cal.App.4th at p. 1097.)

C

*For Purposes of Determining NREFM Status, A Parent Is A Relative Within the Meaning of Section 361.3, Subdivision (c)(2)*

The definition of relative under section 361.3, subdivision (c)(2) includes an adult who is related to the child by blood, adoption, or affinity within the fifth degree of

kinship.  By its plain meaning this includes a parent, who is related to his or her child in the first degree of lineal kinship.  (Rule 5.502(34); Prob. Code, § 13, subd. (b).)[5] Although the dependency code draws a distinction between a parent and a relative in other contexts,[6] we conclude the Legislature did not intend to distinguish between a parent and other relatives for purposes of determining NREFM status.

---

[5]    Probate Code section 13 explains "[t]he degree of kinship or consanguinity between two persons is determined by counting the number of generations separating those persons, pursuant to subdivision (b) or (c).  Each generation is called a degree." (*Id*., subd. (a).)  "Lineal kinship or consanguinity is the relationship between two persons, one of whom is a direct descendant of the other.  The degree of kinship between those persons is determined by counting the generations separating the first person from the second person.  In counting the generations, the first person is excluded and the second person is included.  For example, parent and child are related in the first degree of lineal kinship or consanguinity, grandchild and grandparent are related in the second degree, and great-grandchild and great-grandparent are related in the third degree." (*Id*., sub. (b).)

"Collateral kinship or consanguinity is the relationship between two people who spring from a common ancestor, but neither person is the direct descendent of the other.  The degree of kinship is determined by counting the generations from the first person up to the common ancestor and from the common ancestor down to the second person.  In counting the generations, the first person is excluded, the second person is included, and the common ancestor is counted only once.  For example, siblings are related in the second degree of collateral kinship or consanguinity, an aunt or uncle and a niece or nephew are related in the third degree, and first cousins are related in the fourth degree." (Prob. Code, § 13, subd. (c).)

[6]    For example, section 361.3 governs placement with a relative when a child is removed from the custody of his or her parent.  Even though a parent is a relative within the definition of section 361.3, subdivision (c)(2), in that context, the juvenile court is not required to consider placing a child with a parent.  If the literal meaning of a word or sentence, when considered in the context of a statute, is contrary to the legislative intent apparent in the statute, its literal construction will not be adopted.  (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387; *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [a literal construction of statutory language that leads to absurd results may be disregarded for a construction that furthers the legislative intent apparent in the statute].)

Before January 1, 2014, an NREFM was defined as "any adult caregiver who has an established familial or mentoring relationship with the child." (Former § 362.7; Stats. 2013, ch. 294, § 1; *Samantha T.*, *supra*, 197 Cal.App.4th at p. 108.) In *Samanatha T.*, this court, noting that it was sympathetic to the Agency's argument a narrow interpretation of section 362.7 might prevent otherwise appropriate placements, held that a woman who had a long-standing and close relationship with the children's mother did not meet the definition of an NREFM because she did not have a familial or mentoring relationship with the children. (*Samantha T.*, at pp. 97, 110-111.)

In 2013, this court decided *In re Michael E.* (2013) 213 Cal.App.4th 670 (*Michael E.)*, which concerned the juvenile court's refusal to consider the father's girlfriend, who was the mother of the dependent child's half sibling, for placement as the dependent child's NREFM. (*Id.* at p. 674.) Rejecting the argument NREFM status is conferred through a mutual relative when there is no existing relationship between the child and the person seeking recognition as an NREFM, this court noted that section 362.7, by its plain terms, applies when the child has an existing relationship with an individual seeking NREFM status. (*Michael E.,* at p. 675.) Notwithstanding the plain terms of the statute, this court concluded the juvenile court should have considered whether the child's placement with his half sibling's mother would further the legislative goals of allowing

Similarly, section 361.2 controls placement in the custody of a noncustodial parent under section 361.2. The more specific statute controls placement with a noncustodial parent. If we can reasonably harmonize two statutes dealing with the same subject, we give concurrent effect to both, even though one statute is specific and the other is general. (*In re Greg F*. (2012) 55 Cal.4th 393, 407.) Thus, although a noncustodial parent is the child's relative within the meaning of section 361.3, subdivision (c)(2), a parent is not considered for relative placement under section 361.3.

the child to remain in familiar surroundings, facilitating family reunification or providing a culturally sensitive environment to the child. (*Id*. at pp. 675-676.)

Less than eight months after *Michael E*. was decided, the Legislature modified section 362.7 to include "an adult caregiver who has an established *familial relationship with a relative of the child, as defined in paragraph 2 of subdivision (c) of Section 361.3*" as an alternative definition of an NREFM. (Stats. 2013, ch. 294, § 1, italics added.) The Legislature is deemed to be aware of statutes and judicial decisions in existence. (*People v. Neild* (2002) 99 Cal.App.4th 1223, 1226.) We presume the Legislature amended section 362.7 in view of its recognition that a parent is related to his or her child in the first degree of lineal kinship (Prob. Code, § 13, subd. (b)), and its awareness of judicial decisions noting that the existing limited definition of NREFM did not comport with its goals of maintaining stability for a child who has been removed from parental custody (*Michael E.*, *supra*, 213 Cal.App.4th at pp. 675-676; *Samantha T., supra,* 197 Cal.App.4th at pp. 109-110). The intent of the Legislature to include a person with established familial ties to a parent as an NREFM is clearly expressed both in the plain language of section 362.7 as well as the statute's judicial and legislative history. It would be anomalous to afford NREFM status to someone who has an established familial relationship with the child's cousin or stepparent, but deny NREFM status when that person's familial relationship is only with the child's parent.

We conclude the juvenile court misinterpreted the law and abused its discretion when it ruled that Luis was not an NREFM because the term "parent" was not included in the definition of a relative. Luis was an NREFM because he had an established familial

11

relationship with Charlotte. He also qualified as an NREFM because he had a familial relationship with Joshua. "Familial" means "of, relating to, or suggestive of a family." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 451, col. 2.) Luis and Charlotte had dated for a year and a half. Luis spent one or two nights a week in the family home. He helped Joshua with his homework, played sports with him, and went swimming and hiking. Although Joshua reacted negatively to Luis, that does not defeat Luis's status as an NREFM. However, as we will discuss, the juvenile court properly considered the nature of Joshua's relationship with Luis in determining whether the placement was in Joshua's best interests.

D

*The Juvenile Court Was Not Required to Order the Agency to Evaluate Luis's Home*

Charlotte contends that because Luis qualified as an NREFM, the juvenile court was required to order the Agency to evaluate Luis's home for placement. We disagree.

Section 362.7 provides: "When the home of [an NREFM] is being considered for placement of a child, the home shall be evaluated, and approval of that home shall be granted or denied, pursuant to the same standards set forth in the regulations for the licensing of foster family homes that prescribe standards of safety and sanitation for the physical plant and standards for basic personal care, supervision, and services provided by the caregiver." Thus the purpose of an evaluation is to ensure (1) the home meets standards for safety and sanitation and (2) the NREFM can provide appropriate basic personal care, supervision and services to the child. However even if the home meets

12

foster care standards for approval, any placement under section 362.7 must be in the child's best interests. (*Samantha T.*, *supra*, 197 Cal.App.4th at p. 108.)

"The best interest of the child is the fundamental goal of the juvenile dependency system, underlying the three primary goals of child safety, family preservation, and timely permanency and stability. [Citation.] 'The concept of a child's best interest "is an elusive guideline that belies rigid definition. Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult." [Citation.]' " (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227.) We review the juvenile court's order for abuse of discretion. "[R]eversal is warranted only if there is no reasonable basis on which the trial court could conclude that its decision advanced the best interests of the child." (*In re Marriage of Melville* (2004) 122 Cal.App.4th 601, 610 (*Melville*).)

Here, at the time of the contested disposition hearing, the Agency had completed a portion of the evaluation required for placement—Luis's initial background checks and social interview. The social worker spoke with Joshua several times about placement with Luis. Based on a number of factors, including Joshua's aversion to Luis, the social worker concluded it was not in Joshua's best interests to place him with Luis. Charlotte disagreed with the social worker's conclusion and asked the juvenile court to order the Agency to complete its evaluation of Luis's home.

The juvenile court reasonably concluded placement with Luis was not in Joshua's best interests. The court determined that placement with Luis would not offer Joshua the desired degree of stability necessary for a child in out-of-home placement. In large part, this was due to Joshua's consistent negative reactions to the proposed placement. The

13

court also found that Luis could not adequately supervise Joshua and questioned his ability to protect Joshua from Charlotte. The court did not abuse its discretion when it determined that placement in foster care was in Joshua's best interests. (*Melville*, *supra*, 122 Cal.App.4th at p. 610.) Thus, the juvenile court was not required to order the Agency to complete its evaluation of Luis's home.

Although the juvenile court erred when it determined that a parent is not a relative for purposes of determining NREFM status, a judgment may not be reversed on appeal unless the reviewing court, after examining the entire cause, including the evidence, concludes that the error caused a miscarriage of justice. (Cal. Const., art. VI, § 13.) We conclude that it was not reasonably probable a result more favorable to the appellant would have been reached in the absence of error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

DISPOSITION

The order is affirmed.

NARES, Acting P. J.

WE CONCUR:

HALLER, J.

McDONALD, J.

14

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re JOSHUA A., a Person Coming Under the Juvenile Court Law. | D067498 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3656) |
| v. | |
| CHARLOTTE A., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed July 17, 2015, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HALLER, Acting P. J.

Copies to:  All parties

2