Filed 2/22/23 (unmodified opn. attached)

CERTIFIED FOR PARTIAL PUBLICATION[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| D.S.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,<br><br>    Respondent;<br><br>SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Real Party in Interest. | E079017<br><br>(Super.Ct.No. J290699)<br><br>**ORDER MODIFYING OPINION**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

The opinion filed in this matter on February 15, 2023, is modified as follows:

On page 13, following the very last sentence ending in "ICWA compliance on an appeal from any such order," a new paragraph is to be added. The paragraph should read:

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.D.

1

Petitioner is DIRECTED to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

This modification does not change the judgment.

CERTIFIED FOR PARTIAL PUBLICATION

FIELDS
        J.

We concur:

MILLER
      Acting P. J.


CODRINGTON
      J.

CERTIFIED FOR PARTIAL PUBLICATION[*]

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| D.S., | |
| Petitioner, | E079017 |
| v. | (Super.Ct.No. J290699) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

PURPORTED APPEAL from an order of the Superior Court of San Bernardino County, treated as petition for extraordinary writ. Lynn M. Poncin, Judge. Petition granted.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.D.

1

Jamie A. Moran, by appointment of the Court of Appeal, for Petitioner.

Tom Bunton, County Counsel, Joseph R. Barrell and Glen C. Moret, Deputy County Counsel, for Real Party in Interest.

## I. INTRODUCTION

Petitioner D.S. (Mother) is the adoptive mother of A.S. In 2021, San Bernardino County Children and Family Services (CFS) filed a petition pursuant to Welfare and Institutions Code[1] section 300 et seq. on behalf of A.S. in response to allegations of physical abuse. During the pendency of the proceedings, Mother filed a petition pursuant to section 388, seeking to have A.S. placed back in Mother's home. She filed a notice of appeal from the summary denial of this petition.

However, on appeal, Mother does not address any issue encompassed by her section 388 petition. Nor does she seek reversal of the order denying her petition or reversal of any prior jurisdictional or dispositional orders. Instead, Mother's opening brief is entirely devoted to seeking review of the adequacy of the juvenile court and CFS's efforts to fulfill their obligations under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.), seeking only to have the matter "remanded with instructions for the juvenile court to order full compliance with the inquiry provisions of the ICWA."

As a result, we construe Mother's appeal as a petition for extraordinary writ seeking an order directing the juvenile court and CFS to comply with their statutory

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

duties under ICWA and the related California statutes; and, upon consideration of the matter on the merits, we grant the requested relief.

## II. FACTS AND PROCEDURAL HISTORY

Mother is the only adoptive parent of A.S. On September 28, 2021, CFS filed a petition on behalf of A.S. pursuant to section 300 et seq. in response to allegations that Mother had physically abused A.S. At the detention hearing on September 29, Mother personally appeared and (1) confirmed she was the only adoptive parent of A.S., (2) denied knowledge of any Indian ancestry, and (3) provided contact information for several relatives, including a maternal aunt, maternal uncle, and maternal grandparents. No subsequent reports filed by CFS document or otherwise suggest that social workers contacted any of these relatives to inquire whether they had knowledge of A.S.'s potential status as an Indian child.

At a contested jurisdictional and dispositional hearing held on January 3, 2022, the juvenile court found that ICWA did not apply, denied further reunification services to Mother, and set the matter for a permanency planning hearing pursuant to section 366.26. On May 3, the juvenile court held a hearing pursuant to section 366.26. However, the juvenile court did not terminate Mother's parental rights and instead set the matter for further hearing.

On May 16, 2022, Mother filed a petition pursuant to section 388, requesting only that A.S. be placed back in Mother's home based upon purported changed circumstances. Her petition did not request a reinstatement of reunification services or a change in the juvenile court's other jurisdictional or dispositional orders. The juvenile court summarily

3

denied the petition without a hearing, and Mother filed a notice of appeal from the order denying her section 388 petition.

## III. DISCUSSION

### A. *We Will Construe Mother's Appeal as a Petition Seeking a Writ of Mandate*

" ' "[A]n appealable judgment or order is a jurisdictional prerequisite to an appeal." ' [Citations.] . . . ' "Appeals in dependency proceedings are governed by section 395," ' " and " ' " '[a] consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on appeal from a later appealable order.' " ' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 74; *In re A.A.* (2016) 243 Cal.App.4th 1220, 1234.) Additionally, " ' "[o]ur jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from." ' " (*In re J.F.*, at p. 75.) In this case, Mother has appealed from the juvenile court's order denying her section 388 petition. However, the petition raised only the issue of temporary placement of A.S. The issue of ICWA compliance was never raised in this petition.[2] Thus, the issue Mother raises in her opening brief is clearly outside the scope of her notice of appeal, as well as the order from which she appealed.

---

[2] Nor could the section 388 petition reasonably be construed to encompass any issue involving ICWA compliance. The ICWA and related California statutes are intended to provide tribal entities with notice and an opportunity to participate in any hearing "that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement . . . ." (§ 224.3, subd. (a).) Mother's section 388 petition would not have led to any of these outcomes, as her petition did not seek reversal of the juvenile court's prior orders terminating reunification services or setting the matter for a permanency planning hearing pursuant to section 366.26. Thus, Mother's petition, even if granted, would have only provided for A.S.'s

*[footnote continued on next page]*

4

Further, we observe that ordinarily, the failure to comply with statutory duties under ICWA is not grounds for reversal of juvenile dependency orders issued prior to termination of parental rights. (*In re S.H.* (2022) 82 Cal.App.5th 166, 177-179 [failure to conduct proper initial inquiry under ICWA does not warrant reversal of jurisdictional and dispositional orders]; *In re Dominick D.* (2022) 82 Cal.App.5th 560, 567 ["ICWA inquiry and notice errors do not warrant reversal of the juvenile court's jurisdictional or dispositional findings and orders other than the ICWA finding itself."].) Instead, to the extent any party believes that an order directing ICWA compliance is necessary while a juvenile dependency proceeding is still pending, that party should seek review by petition for extraordinary writ. (See § 366.26, subd. (*l*); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 261 [granting writ directing compliance with ICWA]; *Justin L. v. Superior Court* (2008) 165 Cal.App.4th 1406, 1411 [same]; *D.B. v. Superior Court* (2009) 171 Cal.App.4th 197, 208 [same].)

Nevertheless, we recognize that " '[t]he best interest of the child is the fundamental goal of the juvenile dependency system, underlying the three primary goals of child safety, family preservation, and timely permanency and stability.' " (*In re Joshua A.* (2015) 239 Cal.App.4th 208, 218.) Because CFS has chosen to respond to Mother's contention on the merits and has not conceded that it has any duty under ICWA in this case, we do not believe the interests of justice or the best interests of A.S. are

---

placement back in Mother's home until the time of the continued permanency planning hearing. Mother's section 388 petition would not have resulted in any of these outcomes, and it did not seek reversal of the juvenile court's prior orders terminating Mother's reunification services.

5

served by declining to the address the issue of ICWA compliance, only to have the issue raised anew in a subsequent appeal from a future permanency planning order.

Thus, we will exercise our discretion to construe Mother's appeal as a petition for writ of mandate (*Olson v. Cory* (1983) 35 Cal.3d 390, 400-401 [treating premature defective appeal as a writ petition]; *Jennifer T. v. Superior Court* (2007) 159 Cal.App.4th 254, 260 [construing defective appeal from order setting a § 366.26 hearing as a petition for writ of mandate]), which would have been the more appropriate vehicle for seeking an interlocutory order directing ICWA compliance (*Justin L. v. Superior Court*, *supra*, 165 Cal.App.4th at pp. 1408-1411 [issuing preemptory writ of mandate directing juvenile court and child welfare agency to comply with inquiry and notice requirements under ICWA]). As we explain, we believe that Mother has established that she is entitled to the order requested.

B. *Legal Background and Standard of Review*

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)

The Welfare and Institutions Code "creates three distinct duties regarding ICWA in dependency proceedings. First, from the [department's] initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a

6

'reason to *believe*' the child is an Indian child, then the [department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052; § 224.2.)

Following the inquiry stages, the juvenile court may make a finding that ICWA does not apply because the department's inquiry and due diligence was " 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.) However, the duty to inquire is " 'an affirmative and continuing duty' " and the juvenile court " 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' " (*In re D.S.*, at p. 1048, 1050 ; *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["[T]he juvenile court has a continuing duty to conduct an inquiry when it has received information that a dependent child might be an Indian child, as defined by ICWA . . . ."].)

A juvenile court's finding that ICWA does not apply includes an implicit finding that social workers fulfilled their duty of inquiry. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order." (*In re A.M.* (2020) 47 Cal.App.5th 303, 314; *In re Austin J.*, at p. 885 [finding reviewed for substantial evidence and implicit finding made that social workers fulfilled their duty of inquiry].)

7

C. *The Department Failed To Comply with Its Statutory Duty of Inquiry*

Mother claims that CFS failed to fulfill its duty of initial inquiry because the record does not show any effort to interview extended family members in order to determine whether any information might exist that would suggest A.S. is an Indian child. We agree.

The record in this case indicates that Mother provided contact information for a maternal uncle, maternal aunt, and maternal grandparents at the time of the detention hearing. The record also shows that A.S. identified the existence of these relatives when speaking with a social worker. However, none of CFS's reports document any effort to contact any of these individuals for the purpose of making an ICWA inquiry. Thus, the record does not support an implied finding that CFS fulfilled its duty of initial inquiry under ICWA or the juvenile court's finding that ICWA does not apply.

CFS concedes that its efforts in this case would normally be insufficient to fulfill its statutorily mandated duty of inquiry, but it argues that it had no duty to conduct an inquiry under the unique facts of this case because all of the identified relatives were adoptive relatives. In support of this argument, CFS relies on *In re Francisco D.* (2014) 230 Cal.App.4th 73 (*Francisco D.*), which concluded that ICWA is inapplicable unless the child is " 'a member of an Indian Tribe' " or "the biological child of a member of a tribe" (*In re Francisco D.*, at pp. 83-84). We disagree.

First, as acknowledged by CFS, *Francisco D.* predates the current statutory scheme. Under the current statutory scheme, section 224.2 sets forth specific steps that a child welfare agency must undertake in order to fulfill its duty of inquiry under ICWA.

8

(§ 224.2.) Notably, section 224.2 was not added to the Welfare and Institutions Code until 2018—years after *Francisco D.* was decided. As such, *Francisco D.* is of little value for the purpose of interpreting the obligations imposed by ICWA and the related California statutes currently in effect.

Second, we do not believe the logic of *Francisco D.* can be extended to apply to the current statutory scheme. Specifically, section 224.2 provides that the duty of initial inquiry under ICWA now includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).) Under California law, "an adopted person and the adopting person are, by law, in a parent-child relationship the same as a natural parent and child" (*Ehrenclou v. MacDonald* (2004) 117 Cal.App.4th 364, 372), and section 224.2, subdivision (b), makes no distinction when using the term "parent." Additionally, inclusion of legal guardians, Indian custodians, others who have an interest in the child, and the party reporting child abuse or neglect in the list of persons who must be interviewed does not suggest any limitation on the duty of inquiry based upon a biological connection to the child.[3] In light of this clear and unambiguous language, we

---

[3] Arguably, even the term "extended family member" does not suggest the necessity of a biological connection to the child. ICWA provides that the meaning of " 'extended family member' " is "defined by the law or custom of the Indian child's tribe" and may include the child's "brother-in-law," "sister-in-law," and "stepparent." (25 U.S.C. § 1903, subd. (2).)

find no basis to conclude that the duty of inquiry imposed under section 224.2 is limited only to biological relatives.

As CFS concedes, the record in this case clearly shows that it failed to contact multiple known family members for the purpose of fulfilling its duty of inquiry under ICWA, and the failure to do so is not excused simply because these family members may be related by adoption.

D. *The Record Does Not Permit Us To Conclude CFS's Failure Was Harmless*

CFS also argues that, even if it failed to fulfill its duty of inquiry, any such failure should be deemed harmless. We disagree.

We acknowledge that the standard of prejudice requiring reversal in cases involving ICWA is unsettled in the Courts of Appeal. (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 433 ["Courts of Appeal are divided as to whether a parent must make an affirmative showing of prejudice to support reversal . . . ."].) However, this court has adopted the standard of prejudice articulated in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*), which rejects both an automatic rule of reversal or a rule that places the burden squarely on the parents to show the likelihood of obtaining a more favorable result. (*Id.* at pp. 743-745.) Instead, we explained that reversal is required "where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.)

CFS concedes that under this standard, the record discloses that there was "readily available information that could have been gathered from the relatives," but it questions

10

whether any such information would have borne meaningfully on whether A.S. was an Indian child. However, in considering the prejudicial effect of a social services agency's failure to discharge its duty to inquire under ICWA, this court has repeatedly held that the failure to comply with an *initial* duty of inquiry is deemed prejudicial in the absence of information in the record to suggest otherwise. (*In re K.R.* (2018) 20 Cal.App.5th 701, 709; *In re N.G.* (2018) 27 Cal.App.5th 474, 484; *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745.) As this court has previously explained: "[W]here the record does not show what, if any, efforts the agency made to discharge its duty of inquiry [citations]; . . . the burden of making an adequate record demonstrating the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements must fall squarely and affirmatively on the court and the agency," and "as a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible." (*In re N.G.*, at p. 484.)

CFS argues that information held by extended family members in this case would be unlikely to bear meaningfully on whether A.S. was an Indian child because Mother already denied knowledge of Indian heritage, and there was no evidence that she was estranged from the identified family members. We disagree. "In determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child. In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child—regardless of whether the information ultimately shows the child

11

is or is not an Indian child." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 435; *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745 ["While we cannot know how [a relative] would answer the inquiry, [the relative's] answer is likely to bear meaningfully on the determination at issue . . . ."].) Thus, the fact that family members might further disavow knowledge of potential Indian ancestry is not dispositive.

On this record,[4] it is clear that the information known to relatives was "likely to bear meaningfully" upon whether A.S. is an Indian child. Under *Benjamin M.*, even if the identified relatives responded to an ICWA inquiry by confirming their lack of information, such an answer assists CFS and the juvenile court in making a fully informed determination regarding whether ICWA applies. Under this court's precedent, we cannot conclude that the failure to make such an inquiry was harmless.

## IV. DISPOSITION

The petition for extraordinary writ is granted. Let a preemptory writ of mandate issue directing the juvenile court and CFS to comply with the inquiry provisions of ICWA and of Welfare and Institutions Code sections 224.2 and 224.3. The juvenile court is further directed to vacate or continue any hearing set pursuant to section 366.26. If, after completing the initial inquiry, neither CFS nor the juvenile court has reason to believe or reason to know that A.S. is an Indian child, the juvenile court may proceed

---

**4** CFS points out that some courts have come to different *conclusions* when applying the test articulated in *Benjamin M*. However, different outcomes are to be expected because the very purpose of the test articulated in *Benjamin M*. is to avoid "applying broad, rigid reversal rules" in favor of focusing on the specific facts of each case. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

12

with setting the matter for a permanency planning hearing pursuant to section 366.26.  If, however, CFS or the court discovers a reason to believe that A.S. is an Indian child, the court shall not conduct any such hearing until such time as the further inquiry and notice requirements of 224.2 and 224.3 are met.  If the juvenile court has already held a hearing pursuant to section 366.26 during the pendency of this proceeding resulting in an order terminating parental rights, this opinion shall be without prejudice to any claim involving ICWA compliance on an appeal from any such order.

CERTIFIED FOR PARTIAL PUBLICATION

FIELDS_____
J.

We concur:

MILLER_____
Acting P. J.

CODRINGTON_____
J.

13