Filed 5/20/25  In re Joel A. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re JOEL A., A Person Coming Under the Juvenile Court Law. | B342611 (Los Angeles County Super. Ct. No. 23PSJP00055A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. RAQUEL A., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stacy Wiese, Judge.  Dismissed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

In this juvenile dependency case, Raquel A. (mother) purports to challenge the juvenile court's decision not to place her infant with a family friend, claiming its decision violates Welfare and Institutions Code section 361.3.[1]  We dismiss this appeal because mother lacks standing to challenge the court's placement decision in light of the court's subsequent termination of mother's parental rights over the infant.  Mother's appeal lacks merit in any event because section 361.3 applies only to placement with *relatives* (rather than family friends), and because the court's placement decision was not an abuse of discretion.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Mother gave birth to Joel A. in May 2023 while she was incarcerated.[2]  At the time of birth, both mother and Joel tested

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]  Joel's father is unknown.  Over the course of the proceedings, mother identified a number of different men as the alleged father of Joel, none of whom was confirmed to be the father.

2

positive for fentanyl.[3]

## II.    Procedural Background

### A.    *Petition, detention and initial placement of Joel*

On May 23, 2023, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Joel because (1) mother has a "history of substance abuse, including methamphetamine, and is a current abuser of fentanyl," and (2) Joel was born with "a positive toxicology screen for fentanyl."  The petition further alleged that mother's conduct "endanger[ed] [Joel's] physical health and safety and place[d] [Joel] at risk of serious physical harm and damage," warranting the exercise of jurisdiction under section 300, subdivision (b).

On May 24, 2023, the juvenile court ordered Joel detained from mother and gave the Department discretion to place him with any appropriate relative or nonrelative extended family member (NREFM).  Mother did not identify anyone who could care for Joel at the time of detention, so the Department placed him in the foster home of Ms. C. and Mr. P.

### B.    *Jurisdiction and disposition hearings*

On November 1, 2023, the juvenile court sustained the allegations of the petition as pled and exerted dependency jurisdiction over Joel.

At the time of that hearing,[4] mother offered the juvenile

---

[3]    Mother has four other children who are not at issue in this appeal.

[4]    Prior to the hearing, mother had identified as possible placement options (1) her maternal grandmother, who lived in Mexico, (2) her former roommate Edwin G. and his girlfriend, and

3

court two possible placement options for Joel. In October 2023, mother identified Nancy and her husband Jose as maternal relatives living in Mexico. At the November 1, 2023, hearing, mother for the first time identified Claudia A. as a family friend "[i]n case the relative in Mexico doesn't work out."[5]

On December 6, 2023, the juvenile court held a disposition hearing. The court removed Joel from mother's custody, but bypassed any reunification services because mother's parental rights over one of Joel's siblings had been terminated due to mother's substance abuse issues (rendering bypass appropriate under subdivisions (b)(10) and (b)(11) of section 361.5) and because of the six-year prison sentence mother was serving (rendering bypass appropriate under subdivision (e) of section 361.5). The court set the matter for a permanency planning hearing, but in the interim ordered the Department to continue investigating Nancy and Claudia as possible placements for Joel.

C. *The Department's placement investigation pending the permanency planning hearing*

The Department identified adoption as the most appropriate permanent plan for Joel.

Consistent with mother's preference and the statutory preference for placement with relatives, the Department initially

---

(3) her former roommate's sister-in-law. The maternal grandparents had drug and alcohol abuse histories, and the others ultimately withdrew from consideration.

[5]     The record notes that Claudia contacted a social worker "regarding placement of Joel," in mid-September 2023, but mother at that time told the Department she was not familiar with Claudia at all.

focused its efforts on investigating whether placement with Nancy was appropriate. The Department asked the Consulate of Mexico to conduct an international home study of Nancy's home in Mexico. The Consulate was nonresponsive, and the parallel social services agency in Mexico did not conduct the home study the Department requested. At an August 12, 2024, hearing, the court noted the nonresponsiveness of the Mexican authorities and set a special hearing for October 7, 2024, regarding placement of Joel with this relative pursuant to section 361.3. The Mexican authorities had still not conducted the home study by September 17, 2024. Mother acknowledged that the Department had "done everything correctly" "technically" "under the notice provisions" to secure the home study in Mexico.

Seeing the lack of progress with placing Joel with his relative, the Department began to investigate the family friend, Claudia. The Department spoke with Claudia, and later learned that Claudia was a close friend of mother's *sister* (rather than mother). Although mother initially expressed a lack of closeness to Claudia (going so far as to ask "who [Claudia] was"), mother later explained that she wanted Claudia to have custody because mother believed Claudia would "allow" mother "to have physical access to" Joel once mother was released from prison. In September 2024, the Department assessed Claudia's home.

While the Department conducted these investigations, Joel remained fostered in the home of Ms. C. and Mr. P.

**D.    *The combined relative placement and permanency planning hearing***

The juvenile court held a combined relative placement and permanency planning hearing on October 7, 2024.

5

### 1. *Placement*

Regarding placement, mother asked that Joel be removed from the foster family and placed with Claudia. In support of her request, she called Claudia as a witness. Claudia testified that (1) she was "best friends with [mother's] younger sister," (2) she had helped care for one of mother's older children in years past, but had stopped nearly all contact with them thereafter, and (3) she lived near other maternal relatives. Claudia testified she last had contact with mother three years prior to mother's incarceration, had not visited Joel at all, and had not even asked about visiting Joel until September 2024.

The court declined to alter Joel's placement. At the outset, the court noted that Claudia was *not* a "relative" entitled to preference under section 361.3; instead, she was a nonrelated extended family member (NREFM) as defined in section 362.7. The court nevertheless applied the factors enumerated in section 361.3 for examining whether to place a child with a relative. Although mother's desire to place Joel with Claudia counseled in favor of placement with Claudia, several of the factors—such as whether Joel would be placed with any siblings, the good moral character of the persons seeking placement, both placement options' desire to adopt, and the safety and stability of each placement—favored neither placement. In the court's view, the "relationship" between the child and potential placements heavily favored keeping Joel in the foster family's custody: Claudia had no relationship with Joel whatsoever (and had not tried to seek one until a month before the hearing) and had only the vaguest sense of his special needs, while Joel had been with the foster family since birth, had a "very strong bond" with the foster parents and their relatives, and had been having special needs

6

attended to by the foster parents for his entire life.

2. *Permanency planning*

The court rejected mother's argument that the beneficial parental relationship exception to adoption applied. (§ 366.26, subd. (c)(1)(B)(i).) The court found clear and convincing evidence Joel was adoptable and that no exception to adoption applied, and terminated mother's parental rights.

The court designated Ms. C. and Mr. P. as Joel's prospective adoptive parents.

E. **Appeal**

Mother filed a timely notice of appeal.

## DISCUSSION

The sole ground for mother's appeal is that the juvenile court "erred when it declined to place Joel with Claudia" under section 361.3.

## I. **Mother Lacks Standing**

Only a party whose "rights or interests are injuriously affected by [a] decision in an immediate and substantial way" may appeal that decision. (*In re K.C.* (2011) 52 Cal.4th 231, 236 (*K.C.*).) We review de novo this question of standing. (*Sirott v. Superior Court* (2022) 78 Cal.App.5th 371, 380 ["Standing is a question of law . . . reviewed de novo"].)

Mother lacks standing. Where, as here, a parent on appeal attacks a juvenile court's pre-termination decision where to place a child, that parent has standing to appeal only if that placement decision somehow undermines the subsequent order terminating her parental rights; absent a link between placement and termination, the parent is not injuriously affected by the placement decision and thus lacks standing to challenge that decision. (*K.C.*, *supra*, 52 Cal.4th at p. 238 [standing exists "only

7

if the placement order's reversal advances the parent's argument against terminating parental rights"]; *In re Cody R.* (2018) 30 Cal.App.5th 381, 390.) Mother does not challenge the juvenile court's termination decision on appeal. Nor has she otherwise articulated any link between the juvenile court's decision not to place Joel with Claudia on the one hand, and the court's decision to terminate mother's parental rights on the other. We must accordingly dismiss her appeal. (*Cody R.*, at pp. 383-384.)

## II. The Juvenile Court's Placement Decision Was Also Not an Abuse of Discretion

Even if we were to assume mother had standing, mother has not demonstrated that the court's decision not to place Joel with Claudia was an abuse of discretion. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

As a threshold matter, mother is incorrect that section 361.3 governs the court's placement decision. That section grants "preferential consideration" to placement of a dependent child "with a relative." (§ 361.3, subd. (a).) "Relative" is a statutorily defined term (*id.*, subd. (c)(2)); more to the point, it does not include persons, like Claudia, who are nonrelated extended family members. (*Samantha T. v. Superior Court* (2011) 197 Cal.App.4th 94, 111, superseded by statute on other grounds as stated in *In re Joshua A.* (2015) 239 Cal.App.4th 208, 215-217 (*Joshua A.*).)

Placement decisions outside of section 361.3 are to be made according to the best interests of the child. (*Joshua A.*, *supra*, 239 Cal.App.4th at pp. 213, 218; cf. *In re N.J.* (2024) 104 Cal.App.5th 96, 128 (*N.J.*) [when section 361.3 applies, court must apply statutorily mandated best interest inquiry rather than "generalized 'best interest inquiry'" applicable in other

8

contexts].) The juvenile court did not abuse its discretion in ruling that placing Joel with his foster family—who had cared for him since birth, who were familiar with his special needs, and with whom he had bonded significantly—was in his best interest rather than placing him with a family friend with whom Joel had no relationship and who had no familiarity with Joel's special needs.

Mother resists this conclusion with what boils down to two arguments. First, she argues that the juvenile court and the Department erred in not making an "emergency placement" of Joel with Claudia. But mother did not even *mention* Claudia until nearly six months after his birth and, even then, did not ask for him to be immediately placed in Claudia's custody.[6] Second, mother argues that Joel's bond with the foster parents cannot be considered because that bond was able to develop only because the Department dragged its feet in investigating Claudia; had the Department moved with more alacrity, mother insists, Claudia would have had the opportunity to develop a bond as well. In support, mother cites *N.J.*, *supra*, 104 Cal.App.5th 96 and *In re Mia M.* (2022) 75 Cal.App.5th 792. But this argument ignores that mother did not first mention Claudia until November 2023, ignores that mother simultaneously named a relative—who has statutory preference—for placement, ignores that mother acknowledged that Claudia was an option "[i]n case the relative in Mexico doesn't work out," and ignores that the delay in

---

[6]     Thus, mother's argument that she has standing because she could have requested emergency placement is doubly wrong: Not only did mother not ever *request* such placement, but such placement also had no impact on the decision whether to terminate mother's parental rights.

evaluating the relative having preference was the fault of the Mexican authorities rather than the Department.  Thus, the Department did not unreasonably drag its feet.  The cases mother cites are inapt:  *N.J.* held that a social services agency had dragged its feet in failing to investigate a relative who had immediately requested placement of the child and actively sought and developed a relationship with the child (*N.J.*, at pp. 125-126), and *Mia M.* held that a bond that developed with a caregiver while a parent was not properly notified of the proceedings in accordance with due process could not be counted against the parent (75 Cal.App.5th at p. 811).

## DISPOSITION

Mother's appeal is dismissed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, P.J.

HOFFSTADT

We concur:

_____, J.

MOOR

_____, J.

KIM (D.)

10