Filed 5/28/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re D.B., a Person Coming Under the Juvenile Court Law. | H051945<br>(Santa Clara County<br> Super. Ct. No. 23JD027540) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>K.B.,<br><br>    Defendant and Respondent;<br><br>D.B.,<br><br>     Appellant. | |

In this unusual case, the juvenile court in an underlying dependency proceeding granted respondent K.B.'s (Mother) request for a restraining order under Welfare and Institutions Code section 213.5[1] against her child, D.B., a 17-year-old dependent of the court. Appellant D.B. challenges the order on the following grounds: (1) the juvenile dependency court was without authority under section 213.5 to issue a restraining order against a dependent; (2) the court's findings were not supported by substantial evidence; and (3) the restraining order violated D.B.'s constitutional right to reunify with Mother.

---

[1] Unless otherwise specified, all undesignated statutory references are to the Welfare and Institutions Code.

We conclude that section 213.5, subdivision (a), vests the juvenile dependency court with authority to issue restraining orders against a dependent child. When exercising its discretion to make such orders against a dependent child, the juvenile dependency court must consider the child's best interest. On this record, the juvenile court appropriately exercised its discretion when it issued the restraining orders, and did not violate the dependent child's constitutional right to reunification. Substantial evidence supports the issuance of the orders. We thus will affirm the restraining orders.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. D.B. and Mother's Family History

Commencing around D.B.'s first birthday, the Santa Clara County Department of Family and Children's Services (the Department) received multiple referrals expressing concern for D.B.'s well-being in Mother's care. D.B. resided with Mother as her father (Father) struggled with substance abuse and was incarcerated. In some instances, the Department concluded the allegations were unfounded, inconclusive, or did not warrant the Department's services. In others, Mother agreed to voluntary services without court intervention.

During D.B.'s early childhood, the referrals primarily involved allegations that Mother physically and emotionally abused and neglected D.B.'s older brother, a teen at the time. It was reported that Mother had a history of substance abuse, suffered from mental health issues, and that Mother, her then-boyfriend, and D.B.'s brother frequently got into violent physical altercations with one another. When D.B. was a toddler, the Department received two referrals concerning D.B. In one incident, Mother allegedly kicked D.B., causing her to fall. In another incident at a grocery store, Mother allegedly pulled D.B.'s hair so forcefully that it was torn from her scalp.

When D.B. was 14 years old, the Department received referrals alleging that Mother physically and emotionally abused D.B. D.B. stated that for years Mother had

constantly threatened her, made demeaning comments to and about her, and physically assaulted her. D.B. also alleged that she witnessed domestic violence between Mother and Mother's then-boyfriend. To cope, D.B. stated she cut herself and smoked marijuana, behaviors which Mother knew of but did not address. No dependency petition was filed by the Department.

At age 15, D.B. gave birth to her son, J.G. Mother filed a probate action for guardianship of J.G., alleging D.B. suffered from mental health issues and substance abuse, and could not safely care for J.G. Mother claimed D.B. often left J.G. with Mother and lacked parenting skills. The probate action prompted the Department to investigate D.B. for general neglect of her son. The Department concluded the allegation was unfounded. The probate court did not establish a guardianship for J.G.

A few months later, the Department received competing referrals related to J.G.'s safety. Mother and D.B. each accused the other of using and/or leaving drugs around the house and engaging in verbal and physical altercations in front of J.G. D.B. alleged Mother hit and pushed her, pulled her hair, and kicked her out of the house. Mother denied the allegations, accused D.B. of lying, and claimed D.B. had physically assaulted her. D.B. admitted to hitting Mother in J.G.'s presence, but stated she acted in self-defense. The Department concluded the allegations of physical abuse by Mother and D.B. were inconclusive.

Shortly thereafter, in June 2023, Mother alleged D.B. repeatedly punched her in the face and shoulder during an altercation over feeding J.G. Mother called law enforcement, and police officers arrested D.B. and detained her in juvenile hall. D.B. denied the allegations and accused Mother of instigating the fight and slamming a door on D.B.'s arm.

The district attorney did not file charges against D.B. for the June 2023 altercation and she was ordered released from juvenile hall. However, Mother refused to allow D.B. back in her house because of D.B.'s assaultive behavior, and stated she feared for her life.

3

D.B. also refused to return to Mother's house and stated she felt unsafe for herself and her son due to Mother's volatile behavior. Although Father expressed interest in caring for D.B., he was not suitable for placement at that time because he had been released from jail for assault and battery of his former partner. In the absence of suitable caretakers, the Department initiated dependency proceedings with Mother's agreement and placed D.B., now almost 17 years old, in protective custody.

### B. The Dependency Proceedings

In June 2023, the Department filed the juvenile dependency petition for D.B. under section 300, subdivision (g), alleging that D.B. was left without any provision for support by Mother and Father, and that Mother consented to the Department taking custody over D.B. At the initial detention hearing the dependency court informed the parties that it was aware of the family's prior probate action and the family's history. After the court made the findings supporting detention, D.B. stated that she would not speak with Mother or visit her at that time. The court recognized the rising tensions in the courtroom between Mother and D.B. but stressed that the goal in dependency proceedings is to reunify families.

At the jurisdiction and disposition hearing, the dependency court admitted the Department social worker's report into evidence, and both Mother and Father submitted the matter to the court without contest. The court made the requisite findings to assume jurisdiction under section 300, subdivision (g) and removal of D.B. from her parents, declared D.B. a dependent child of the court, and adopted the Department's recommended case plan, which included supervised visitation with Mother, unsupervised visitation with Father, counseling and family therapy, and other educational services for D.B.

After the hearing, D.B. struggled in her placement at the housing center. It was alleged that she made threats to kill another child at the housing center, refused to comply

4

with the staff's instruction, and left her placement. A protective custody warrant was issued for D.B.'s return. D.B. returned to the housing center about a month later but she fought with peers, damaged property, and argued with staff. D.B.'s son J.G. was removed from her care and was the subject of his own dependency proceedings.[2] D.B. struggled emotionally with the loss of her son and Mother's rejection of her.

In October 2023, Mother requested termination of reunification services ordered for her and D.B., claiming that D.B. was unwilling to participate in visitation. Mother believed that termination of services would be beneficial to their relationship since D.B. would not feel pressured to reunify with her. In an e-mail from Mother's counsel related to the request, her counsel stated that Mother was "very frustrated with [D.B.]," that D.B. refused to participate in visits and family therapy, and that D.B. opposed visitation between Mother and J.G.

The dependency court heard Mother's request to terminate reunification services. D.B. was not present at the hearing, but her counsel represented that D.B. agreed to the termination of reunification services for Mother. The court granted Mother's request. The Department continued to provide reunification services for Father.

### C.     Mother's Request for Juvenile Restraining Order

In December 2023, Mother filed an ex parte request for juvenile restraining orders against D.B., then age 17, under section 213.5. Mother claimed D.B. made harassing phone calls and a false "welfare check" request that caused law enforcement to stop by Mother's house late at night. Mother also claimed D.B. texted her an image of the location of Mother's house on Google Maps overlayed with an image of a fire. Mother alleged the text message from D.B. was a threat to bomb her house. Mother stated she was afraid for her physical safety and could not sleep at night. The dependency court granted a temporary restraining order pending the noticed hearing on the request.

---

[2] It appears that J.G.'s dependency case resolved with custody of J.G. granted to his father. The case was thereafter dismissed.

At the six-month review hearing related to Father's reunification with D.B., Mother perfected service of her restraining order request on D.B., and the court set the matter for trial. The court questioned whether section 213.5 authorized a dependency court to issue restraining orders against a dependent child and requested that counsel submit briefs on the issue.[3]

After hearing argument on the first day of the trial on Mother's restraining order request, the court determined that section 213.5, subdivision (a), provided dependency courts with authority to issue restraining orders against a dependent child. Noting any lack of authority on the issue, the court observed that the statute provides that the court can issue restraining orders against "any person," a term the court found included a dependent child. The court determined that dependency courts are the proper forum to address such restraining order requests since they have exclusive jurisdiction over issues pertaining to the care and custody of dependent children. Finally, the court concluded it is in the child's best interest to hear such requests in the dependency court where the child has legal representation and the court is familiar with the family's history.

**D.      *The Evidence Related to Mother's Restraining Order Request***

The court commenced trial on Mother's restraining order request immediately after it ruled on the legal issue. Mother testified that D.B. punched her several times in the face and was arrested and detained at juvenile hall in June 2023. Although D.B. was no longer living with her, Mother stated she continued to feel unsafe because D.B. had threatened her life, threatened to bomb her house through a text message, harassed her through threats made on social media and by phone, and damaged her personal property. Mother requested that the restraining order be in effect for at least three-to-five years.

---

[3] Mother and D.B. filed points and authorities. Father opposed the issuance of a restraining order against D.B., but did not file written opposition. The Department took no position on the court's authority to issue a restraining order against a dependent child.

6

D.B. admitted she threatened to bomb Mother's house in her text message but said it was a "clear joke" based on her prior communications with Mother. D.B. acknowledged the inappropriateness of the statement, apologized, and stated it would not happen again. D.B. also did not believe Mother was genuinely afraid of her. D.B. testified that, while the temporary restraining order was in effect, Mother showed up at a court hearing related to D.B.'s son, knowing D.B. would be present at the hearing. Mother was not a participant in those proceedings and D.B. reasoned that, had Mother truly felt threatened by D.B., she would not have been in court that day.

The social worker from the Department also testified regarding recent and drastic improvements in D.B.'s behaviors, progress in her placement, therapy, and school. The social worker stated that the restraining order would not help heal the family, and that alternatives such as counseling, mediation, and education to assist the family would more appropriately address the dynamic between Mother and D.B.

In their closing remarks, Mother's counsel argued that, in addition to the undisputed evidence supporting the issuance of a restraining order, the order would provide Mother and D.B. space to heal and would also protect D.B. from herself. D.B.'s counsel stressed the incongruity of issuing restraining orders against children in dependency proceedings and argued that a restraining order would only exacerbate emotional harm to D.B. Father's counsel opposed the issuance of the restraining order, asserting Mother and D.B. needed instruction to facilitate better communication with one another.

In March 2024, the court issued the restraining order, reiterating that section 213.5 authorized dependency courts to grant restraining orders against dependent children. The court noted it was well-acquainted with the family's history and dynamics, and thus was better positioned to assess the request within the context of the parent-child relationship that gave rise to the incidents. Had the request been heard before the family division of the superior court, the judge noted, the family court may well have granted the restraining

7

order for up to five years. Nevertheless, the court stated: "[i]t does not feel comfortable granting a restraining order against a dependent."

After consideration of the evidence, which also included "everything in the juvenile court file[,]" the court granted Mother's request. The court commented that, whether D.B.'s text message to Mother was a joke or otherwise, her actions should be taken seriously, particularly considering the family's history. The court found that a restraining order for a period of one year was "sufficient to give [D.B.] the message that this is serious[,]" and to provide distance between D.B. and Mother from their "toxic" relationship and allow D.B. to focus on her priorities. The court cautioned Mother about misusing the restraining order to "bait" D.B. into violating the order. The court also noted, "[T]here's no reason somebody couldn't petition to terminate [the] restraining order in the future if the facts supported it . . . [T]he purpose of dependency court having authority to grant these is so that we can keep close supervision of them and we can be very nimble when it comes to modifying them."

The restraining order prohibited all contact between Mother and D.B., and contained personal conduct restraining orders which prohibited D.B. from hitting, harassing, stalking, and disturbing the peace of Mother and required D.B. to stay at least 300 yards away from her.

D.B. was seven months shy of turning 18 when the restraining order was issued. The restraining order expired on March 5, 2025. D.B. filed a timely appeal of the restraining order.[4]

---

[4] Mother filed a response. The Department filed a letter stating it was not taking a position in the appeal.

## II.   DISCUSSION[5]

The question presented in this appeal is one of first impression: can the dependency court, under section 213.5, subdivision (a), issue a restraining order against a dependent child?  Based on well-established principles of statutory interpretation, we conclude that the juvenile dependency court has the authority to issue a restraining order against a dependent minor under section 213.5, subdivision (a), but must consider the child's best interest when exercising its discretion.  On the record before us, we conclude the dependency court acted within its discretion to issue a one-year restraining order against this 17-year-old minor.  Because D.B. voluntarily agreed to the termination of reunification services, we conclude that the order does not violate her constitutional interests in the dependency proceedings.

### A.   *Standard of Review*

We independently review the dependency court's statutory interpretations and legal conclusions.  (*In re Damian L.* (2023) 90 Cal.App.5th 357, 372 (*Damian L.*).)  "When the issue on appeal involves the interpretation and proper application of the dependency statutes…our review is de novo.  [Citations.]"  (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 344.)

We apply the substantial evidence standard to determine whether sufficient facts supported the dependency court's factual findings, and the abuse of discretion standard to

---

[5] D.B. turned 18 years old while this appeal was pending, and the restraining order at issue expired on March 5, 2025.  Generally, these facts would render the appeal moot and, hence, subject to dismissal.  (*In re Emily L.* (2021) 73 Cal.App.5th 1, 13 [except in certain situations, dependency jurisdiction terminates once a child turns 18, which renders an appeal from those proceedings moot]; *City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1079 [appeal from expired injunction order was moot].)  We requested and received supplemental briefing from D.B. and Mother on this issue.  We agree with D.B.'s position that, because this case presents an issue of broad public interest that is likely to evade appellate review and because it could have other consequences for D.B. in future proceedings, we exercise our discretion to consider the appeal.  (*In re D.P.* (2023) 14 Cal.5th 266, 282-287.)

determine whether the court properly issued the restraining order under section 213.5. (*In re L.W.* (2020) 44 Cal.App.5th 44, 51, citing *In re Carlos H.* (2016) 5 Cal.App.5th 861, 866 (*Carlos H.*).) We " 'indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings where there is substantial evidence to support them.' [Citation.]" (*Carlos H.,* at p. 866.) An abuse of discretion occurs when a court makes an arbitrary or capricious determination (*ibid.*), or issues a ruling based on improper legal principles. (*In re A.P.* (2024) 103 Cal.App.5th 1137, 1143.)

### B.      Restraining Orders Against Dependent Children

### 1.      The Dependency Court's Authority Under Section 213.5

We first address the scope of the dependency court's authority to issue restraining orders under section 213.5, subdivision (a).

" ' "Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.]" [Citation.] We construe the statute's words in context, and harmonize statutory provisions to avoid absurd results.' [Citation.]" (*Damian L.*, *supra*, 90 Cal.App.5th at p. 372.) " 'If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 165-166.)

In 1961, the Legislature enacted the Arnold-Kennick Juvenile Court Law to establish a juvenile court within the superior courts, specifically authorized to exercise jurisdiction over dependent and delinquent children. (See §§ 200, 202; *In re Nolan W.* (2009) 45 Cal.4th 1217, 1239 (conc. & dis. opn. of Baxter J.).) The legislation dramatically changed the structure of the juvenile court system. (See Nunn & Cleary,

*From the Mexican California Frontier to Arnold-Kennick: Highlights in the Evolution of the California Juvenile Court, 1850-1961* (2004), vol. 5, J. Center for Fam., Child. & Cts. 3, 25). It led to the creation of the current juvenile justice system, in which dependent children and delinquent children are generally treated in separate divisions of the juvenile court. (§§ 202, 206, 300 [dependency proceedings], 601 & 602 [delinquency proceedings], 241.1, subd. (e) [dual status in limited circumstances].)

Among the powers and duties of juvenile courts under the Arnold-Kennick Juvenile Court Law, section 213.5 allows the courts to issue restraining orders, both ex parte and after a hearing. (§ 213.5, subds. (a), (b), (d), (e).) Subdivision (a) of the statute describes the court's authority to issue such orders in dependency proceedings, whereas subdivision (b) identifies that authority in delinquency proceedings. The subdivision texts, while similarly worded, are not identical.

Section 213.5, subdivision (a), provides that "[a]fter a petition has been filed pursuant to Section 311 to declare a child a dependent child of the juvenile court, and until the time that the petition is dismissed or dependency is terminated, upon application in the manner provided by Section 527 of the Code of Civil Procedure [civil harassment restraining orders] or in the manner provided by Section 6300 of the Family Code, if related to domestic violence [domestic violence restraining orders], the juvenile court has exclusive jurisdiction to issue ex parte [the defined restraining orders]."[6] (*Ibid.*) The

---

[6] A literal interpretation of this sentence would appear to limit the dependency court's authority to only dependency petitions initiated by a probation officer under section 311, as opposed to all dependency petitions under section 300 for abuse or neglect. Courts in the Second and Fourth Appellate Districts have disregarded this limitation, holding that section 213.5 applies to all dependency petitions under section 300. (See *In re Lilianna C.* (2024) 99 Cal.App.5th 638, 641 ["insertion of section '311' was a drafting error."]; *In re H.D.* (2024) 99 Cal.App.5th 814, 819 ["the term 'probation officer' in section 311 is equivalent to the term 'social worker' in juvenile dependency cases"] fn. omitted.) The juvenile dependency court, in this case, also noted this discrepancy in the statute and agreed under *In re Lilianna C.* and *In re H.D.* that the

statute then lists three types of restraining orders the dependency court can issue against a person: (1) orders to protect the child or any other child in the household, (2) orders to protect any parent, legal guardian, or current caretaker of the child, and (3) orders to protect the child's current or former social worker or court-appointed special advocate. (*Ibid.*)

Specifically, as to restraining orders to protect a parent, section 213.5, subdivision (a) states: "A court may also issue an ex parte order enjoining *a person* from molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning, including, but not limited to, making annoying telephone calls as described in Section 653m of the Penal Code, destroying the personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of *any parent, legal guardian, or current caretaker of the child, regardless of whether the child resides with that parent, legal guardian, or current caretaker*, upon application in the manner provided by Section 527 of the Code of Civil Procedure or, if related to domestic violence, in the manner provided by Section 6300 of the Family Code." (*Ibid.*, italics added; see also *id.*, subd. (d)(1) [any orders set forth in subd. (a) may also be issued after a noticed hearing].)

A "person" includes a dependent child. (Cal. Rules of Court, rule 5.502(5) [defines "a child" as "*a person* under the age of 18 years]; see also § 300 ["A child who comes within any of the following descriptions [for dependency] is within the jurisdiction of the juvenile court which may adjudge *that person* to be a dependent child of the court" (italics added.)].)

The statute also expressly states that the dependency court may issue restraining orders to protect "any parent . . . regardless of whether the child resides with that

court's authority to issue restraining orders against dependent minors is effective in all dependency petitions under section 300.  Neither party has raised the issue on appeal, and we do not address it.

parent. . . ." (§ 213.5, subd. (a).) D.B. argues that, as a matter of law, a parent found to have abused a dependent child, or whose reunification services have been terminated by the court, does not qualify for protection under section 213.5, subdivision (a). But nothing in the statute indicates the Legislature intended to limit protections only to nonoffending parents or parents whose reunification rights have not been terminated as D.B. suggests. Accordingly, based on the plain language of the statute, we conclude that the dependency court had legal authority under section 213.5, subdivision (a), to issue the restraining orders again D.B. to protect Mother in this case.

D.B. argues that, when viewed in conjunction with section 213.5, subdivision (b) (restraining orders in delinquency proceedings) and the purpose of dependency proceedings to reunify families, the Legislature did not intend the word "a person" in subdivision (a) to apply to dependent children. Simply stated, D.B. asserts that dependency courts do not have authority to restrain dependent children. Such a result, D.B. argues, is antithetical to the dependency system's purpose to provide "maximum safety and protection" to abused children. (§ 300.2, subd. (a).)

The paragraph governing restraining orders in delinquency proceedings (§ 213.5, subd. (b)) contains the same language as the paragraph governing such orders in dependency proceedings (*id*., subd. (a)), with a few substantive differences. Relevant here, under subdivision (b), the delinquency court may restrain "*the child* from contacting, threatening, stalking, or disturbing the peace of a person the court finds to be at risk from the conduct of the child, or with whom association would be detrimental to the child." (§ 213.5, subd. (b), italics added.) This language does not appear in subdivision (a). D.B. argues that the omission of this language in subdivision (a) reflects a legislative intent to exclude dependent children from persons the juvenile court is authorized to restrain, limiting the juvenile court's authority to issue restraining orders against children only in delinquency proceedings.

13

While D.B. has raised interesting and important questions in this unchartered area of the law, the language in section 213.5, subdivision (a), is not ambiguous.  " 'If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.' [Citation.]." (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 654.)  The statute clearly states that the dependency court may issue restraining orders against "a person" to protect "any parent" even if such parent does not reside with the child.  Had the Legislature intended to provide an exception for dependent children or an exception to offending parents, it would have stated so.  We are persuaded that the straightforward meaning of the statute controls.

Further, the legislative history of section 213.5 does not support D.B.'s arguments that the Legislature intended to *limit* the juvenile court's authority to restrain children only in delinquency proceedings.  "The Legislature enacted section 213.5 in 1989 to provide a means by which a juvenile court could enter [temporary protective orders] and protective orders in connection with a dependency petition, similar to the injunctive powers of the family law courts. [Citations.]" (*In re E.F.* (2021) 11 Cal.5th 320, 329 [deciding the applicable notice requirements for restraining orders against delinquent children].)  In 1998, subsection (b) was added to section 213.5 to extend the same authority to delinquency proceedings, with the purpose of increasing " '. . . efficiency and expedite the resolution of many cases'—for example, by enabling 'victims of juvenile crime . . . to seek protection from the juvenile court, rather than having to pursue a civil harassment protection order in a separate forum.' [Citations.]" (*Ibid.*)  In short, the Legislative purpose behind subsection (b) was to vest delinquency courts with the same

14

authority already provided to dependency courts and to increase efficiency and expediency in resolving such cases within a single forum.[7]

Finally, as D.B. concedes, Mother could have initiated a separate civil action and requested similar restraining orders against D.B. in the family or civil divisions of the superior court. However, because D.B. was under the jurisdiction of the dependency court at the time of Mother's request, the matter would have ultimately been heard by the dependency court regardless of where Mother initiated the restraining order request. Specifically, Code of Civil Procedure section 374.5 states, "A proceeding initiated by or *brought against a minor* for any of the injunctions or orders described in paragraph (1) of subdivision (b) of Section 372 or subdivision (a) of Section 374 shall be heard in the court assigned to hear those matters; except that, *if the minor bringing the action or against whom the action is brought has previously been adjudged a dependent child or a ward of the juvenile court, the matter shall be heard in the juvenile court having jurisdiction over the minor*."[8] (*Ibid.*, italics added.) The restraining orders described under this section include civil harassment and workplace violence restraining orders under Code of Civil Procedure sections 527.6 and 527.8, as well as domestic violence restraining orders under Family Code sections 6200 et seq., 7710 and 7720. (Code Civ. Proc., §§ 372, subd. (b)(1), 374, subd. (a).)[9]

---

[7] As discussed below, over the next two decades, further amendments were made to section 213.5 with the stated purpose to increase efficiency and coordination and expedite the resolution of juvenile restraining orders within a single forum.

[8] Because neither party addressed this statute, we requested and received supplemental briefing from D.B. and Mother on what impact, if any, Code of Civil Procedure section 374.5 has to our analysis of section 213.5, subdivision (a).

[9] Effective January 1, 2025, the Judicial Council added a new rule of court, rule 5.632, to enforce Code of Civil Procedure section 374.5 which, while it has been in effect since 1998, may have gone "unnoticed by juvenile court judges and lawyers who primarily refer to the Welfare and Institutions Code." (Judicial Council of Cal., Advisory Com. Rep., Juvenile Law: Restraining Orders, Aug. 26, 2024, rule 5.632, p. 4.) Rule 5.632 requires that restraining orders identified in Code of Civil Procedure section 374.5,

Here, adopting D.B.'s interpretation of section 213.5 would mean that Mother would have to initiate separate civil actions in the family or civil divisions of the superior court, only to have the matter rerouted back to the juvenile dependency court for determination. (See Code Civ. Proc., § 374.5.) Such a requirement would be contrary to the Legislature's intent under section 213.5 to streamline, consolidate, and increase efficiency in the resolutions of cases involving juvenile restraining orders. In summary, based on the statutory language of section 213.5, subdivision (a), we conclude that the dependency court is within its authority to issue a restraining order against a dependent minor.

### 2. The Court's Exercise of its Authority Under Section 213.5

Although we have interpreted section 213.5, subdivision (a), to authorize dependency courts to issue restraining orders against a dependent child, D.B.'s argument regarding the dependency court's obligation to protect dependent children raises the important question of how dependency courts should exercise that discretion consistent with the purpose of the law governing dependent children.

The protection of children under the care, custody and control of the dependency system is and always must be at the forefront of decisions made about them. (See also § 202 ["protection and safety of the public and each minor"], § 300.2 ["provide maximum safety and protection for children"].) Section 202 requires "[j]uvenile courts and other public agencies charged with enforcing, interpreting, and administering the juvenile court law" to consider, among other policies, "the best interests of the minor. . . ." (*Id.*, subd. (d).) "'The best interest of the child is the fundamental goal of the juvenile dependency system, underlying the three primary goals of child safety, family

---

either initiated by or brought against a dependent child or ward of the juvenile court in family or civil courts, must be heard in the juvenile court with jurisdiction of the child. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011 [the rules of court have the same force of law to the extent that they are not inconsistent with legislative enactments and constitutional provisions].)

preservation, and timely permanency and stability. [Citation.] "The concept of a child's best interest 'is an elusive guideline that belies rigid definition. Its purpose is to maximize a child's opportunity to develop into a stable, well-adjusted adult.' [Citation.]" [Citation.]' [Citation.]" (*In re Joshua A.* (2015) 239 Cal.App.4th 208, 218.) We thus conclude that, consistent with California's public policy to protect dependent children, when evaluating requests for restraining orders against them under section 213.5, the dependency court must consider the best interest of the child.

D.B. suggests that the issuance of a restraining order against a dependent child is never in the child's best interest. We decline to adopt this approach as it overlooks the wide variety of families and children who come into the dependency system, and the complexity of the issues faced by the dependency court and participants in that system. For some families, a restraining order may be the last tool available to protect both parents and teens from violence within the family, even if the person restrained is the child. As this case demonstrates, it is possible in rare instances, to protect the child, the court must restrain the child.

Here, several factors supported the trial court's issuance of a restraining order against D.B. in her best interest. The most important is D.B.'s age: she was almost 18 years old when the court issued the order. The dependency case was opened when D.B. was almost 17, and was based on abandonment by her parents. D.B. had physically assaulted Mother, had been arrested and detained, and there had been mutual physical violence between the two. Tensions between Mother and D.B. continued to escalate, even after months of physical separation and the termination of Mother's reunification services. The record indicates that D.B.'s emotional reaction to Mother and her anger with Mother's rejection of her were interfering with her ability to make intelligent and rational decisions. Without a court-ordered separation from Mother, D.B. ran the risk of physically harming her, resulting in another arrest and entrance into the juvenile justice system – and as she was close to 18 years of age, she was at risk of entering the adult

17

criminal justice system if she committed a criminal act against Mother upon reaching her majority.

Based on these facts, the dependency court did not err in concluding it was in D.B.'s best interest to be restrained from continuing to engage with Mother. Indeed, the record reflects that, after the issuance of the temporary restraining orders, D.B.'s behavior at her placement and therapy significantly improved. The court also carefully limited the order to one year, as opposed to the maximum of three years. Thus, the dependency court acted within its discretion to issue the restraining order against D.B. in her best interest. On this unusual record, the dependency court was best placed to make this decision, and did so thoughtfully.

Nor did the court in this case lose jurisdiction and control over D.B.'s best interest after the issuance of the restraining order. We agree with the dependency court here that, while the case is pending, the dependency court may terminate or modify the restraining order in the future upon request if the facts support such an outcome. (§ 213.5, subd. (d); Cal. Rules of Court, rule 5.630(j)(1).) This authority provides the dependency court with maximum flexibility to address the interests of the protected person and the dependent if circumstances change after the issuance of such an order.

At oral argument, D.B.'s counsel urged an interpretation of section 213.5, subdivision (a), that would require dependency courts to also consider reunifying the family when deciding whether to issue a restraining order against a dependent child. (See § 300.2, subd. (a) ["The focus [of dependency proceedings] shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child."].) We agree that the dependency court can consider family preservation when exercising its discretion where such an outcome is legally viable, but we do not interpret the dependency statutes to require that consideration in every case. It is well established that, "[a]fter reunification services have terminated, the focus of a dependency proceeding shifts from family preservation to promoting the best interest of the

18

child. . . ." (*In re Fernando M.* (2006) 138 Cal.App.4th 529, 534, citing *In re Marilyn H.* (1993) 5 Cal.4th 295, 306; see generally, §§ 361.5 [duration of reunification services]; 366.26 [termination of parental rights].) The Legislature has also granted juvenile courts the discretion to bypass family reunification services altogether in certain situations. (§ 361.5, subds. (b) & (c)(2); *In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1271.) Within the context of the complex dependency rubric, we conclude that section 213.5, subdivision (a), does not require dependency courts to consider preservation of the family unit in every juvenile restraining order case in the child's best interest. Here, where the dependency court had already terminated Mother's reunification services at Mother's request and with D.B.'s agreement, section 213.5, subdivision (a), did not require the court to also consider preservation of the family unit between D.B. and Mother when it issued the juvenile restraining order.

We endorse the sentiment expressed by the veteran dependency judge in this case, who stated it "does not feel comfortable granting a restraining order against a dependent." We emphasize that while we decline to prohibit the grant of restraining orders against dependent children by the juvenile dependency court, they should rarely be issued. Dependency courts should be aware of the severity of the consequences for violations of a restraining order and the particular challenges faced by dependent children.[10] Emphasizing these cautions, we conclude that, based on its plain meaning, section 213.5, subdivision (a), authorizes the dependency court to grant a parent's request for restraining orders against their dependent child. When exercising its discretion to issue or deny

_____

[10] Section 213.5, subdivision (i), states that willful and knowing violations of juvenile restraining orders "shall be a misdemeanor punishable" under the Penal Code. (See also Note, *From Removal to Incarceration: How the Modern Child Welfare System and Its Unintended Consequences Catalyzed the Foster Care-to-Prison Pipeline* (2020) 20 U. Md. L.J. Race, Religion, Gender & Class 289, 294-297 [examining the statistics of foster care children who become incarcerated as adults].) Particularly here, as D.B. noted in her supplemental briefing, the issuance of the restraining order against her may pose consequences for her in future court proceedings related to custody of her son, J.G.

issuance of the requested orders, however, the juvenile dependency court must consider the child's best interest. We further urge that in the rare instance that a juvenile restraining order against a dependent child is issued, our colleagues in the appellate courts carefully review the appropriateness of its issuance.

### C. Sufficiency of Evidence Supporting the Restraining Order

Even though the court stated it considered the entire dependency file in its decision, D.B. asserts "it was clear" the court relied solely on D.B.'s text message to Mother as the basis for issuance of the restraining order. That single act, D.B. asserts, was insufficient to establish any disturbance of Mother's mental or emotional calm, justifying the issuance of a restraining order. Mother contends the record contained substantial evidence of D.B.'s escalating behavior, including D.B.'s arrest for punching Mother in the face, and Mother's testimony that she feared for her safety.

When the court announced its decision orally from the bench, the court stated it was aware of the family's history and the probate guardianship case opened for D.B.'s son. The court indicated it considered the entire dependency file—which included the prior admitted social worker's reports—and the testimony presented at the restraining order hearing when making its decision. While the court noted that D.B. had testified that her text message to Mother was a joke, there is no indication in the record that the court relied exclusively on that message as the basis for issuing the restraining order against D.B.

The dependency court's decision to issue the restraining order against D.B. necessarily means it found D.B. engaged in conduct warranting the order. (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1166 [reviewing court may imply findings "[w]here the statute does not mandate explicit findings, and where substantial evidence supports the juvenile court's order"].) The record contained substantial evidence that D.B. hit Mother, threatened her, and included Mother's statements that she feared for her safety. D.B. did

20

not argue that section 213.5, or any other statute, required the court to make explicit findings. Accordingly, we imply the court made the necessary findings to support the issuance of the restraining order. D.B. has not shown the court's rulings to be arbitrary or capricious, and we discern no error from the record.

### D.    D.B.'s Constitutional Argument

D.B. contends that the restraining order also violated her constitutional right to reunify with her Mother. Mother disagrees, noting that neither party was interested in reunification.

The law is well-established that "children have a fundamental independent interest in belonging to a family unit [citation], and they have compelling rights to be protected from abuse and neglect and to have a placement that is stable, permanent, and that which allows the caretaker to make a full emotional commitment to the child. [Citation.]" (*In re Marilyn H.*, *supra,* 5 Cal.4th 295, 306.)

Assuming such constitutional interest includes D.B.'s "right to be reunified with her mother[,]" D.B. has not shown how her right was violated by the court's issuance of the restraining order. The dependency court terminated Mother's reunification services in November 2023, based on the agreement of all parties. Thus, not only were Mother and D.B.'s reunification services terminated months before the court's issuance of the restraining orders, D.B. agreed to the termination. D.B. also never appealed the orders terminating her right to reunification with Mother. Accordingly, any arguments that she was denied her constitutional rights to reunify with Mother have been forfeited.

### III.    DISPOSITION

The March 5, 2024 juvenile restraining order after hearing is affirmed.

21

_____

Greenwood, P. J.



WE CONCUR:




_____

Danner, J.









_____

Bromberg, J.







H051945 In re D.B.; Santa Clara County DFCS et al. v. D.B.

Trial Court:                                    Santa Clara County Superior Court
                                                Superior Court No.:  23JD027540


Trial Judge:                                    The Honorable Shawna M. Schwarz


Attorney for Appellant                          Sean Paul Perdomo
D.B.:                                           Under appointment by the Court
                                                of Appeal for Appellant


Attorneys for Plaintiff                         Tony Lo Presti,
and Respondent County                           County Counsel
of Santa Clara Department
of Family and Children's Services:              Laura E. Underwood,
                                                Deputy County Counsel


Attorney for Defendant                          Sarah Marie Vaona
and Respondent K.B.:                            Under appointment by the Court of
                                                Appeal for Respondent


H051945 In re D.B.; Santa Clara County DFCS et al. v. D.B.